JEREMIAH TITTEMORE v. VERMONT MUTUAL FIRE INSURANCE COMPANY.

Under the twelfth section of the statute incorporating the Vermont Mutual Fire Insurance Company, which provides, that, when any house, or other building, shall be alienated by sale, or otherwise, the policy shall thereupon be void, a sale of the premises, with a mortgage taken back to secure the payment of the purchase money, is to be treated as an alienation avoiding the policy, even though it be provided, that the mortgagee shall retain the possession, until the purchase money is paid.

But where the holder of the policy executed a warrantee deed of the premises, and at the same time received back a deed of the same premises, with a condition annexed, that, if the grantor in that deed should pay to the grantee the sum of $2000 within three years, and should allow the grantee in that deed to retain possession of the premises until that sum should be paid, then the second deed should be void, otherwise in force, and it appeared, that the grantor in the second deed never, in any form, agreed to pay the sum mentioned, but it was wholly optional with him whether to do so, or not, it was held, that this amounted merely to a conditional sale, and was not such an alienation, as would avoid the policy.

And it was also held, that the two deeds, being executed at the same time, constituted parts of an entire contract, and were to receive the same construction, as if the condition, contained in the second deed, had been inserted in the first deed.

ASSUMPSIT upon a policy of insurance. Plea, the general issue, and trial by jury, November Term, 1847,—REDFIELD, J., presiding.

On trial the plaintiff gave in evidence the policy declared upon, which was dated August 6, 1842, and insured to the plaintiff the sum of $1200 upon his house and shed, represented unincumbered, and other property connected therewith, for the term of six years. The policy was made subject to the provisions of the statute incorporating the company; and by the tenth section of that statute it was provided, that the policy should be binding, in all cases where the assured has a title in fee simple, unincumbered, to the building or buildings insured, and to the land covered by the same,—but that, if the assured have a less estate therein, or if the premises be incumbered, the policy shall be void, unless the true title of the as-

sured and the incumbrance of the premises be expressed therein, and in the application therefor; and by the twelfth section of the same statute it was provided, that when any house, or other building, shall be alienated by sale, or otherwise, the policy shall thereupon be void, and be surrendered to be cancelled,—provided, that the grantee, or alienee, might have the policy transferred to him, by complying with certain forms and conditions. The plaintiff's loss by fire happened in March, 1846. The only questions made in the case were in reference to an alleged alienation of the insured premises by the plaintiff.

A deed from the plaintiff to Philip Van D'Waters, dated January 28, 1842, and conveying the insured premises, in the common form of a deed with warranty, was given in evidence. Also, a deed from Philip Van D'Waters to the plaintiff, bearing the same date, and conveying the same premises, which was also in the common form of a deed with warranty, with this condition annexed,—" Provided, ' nevertheless, that if I, the said Philip Van D'Waters, my heirs, ' executors, administrators, or assigns, shall well and truly pay, or ' cause to be paid, to the said Jeremiah Tittemore, his heirs, execu- ' tors, administrators, or assigns, the sum of two thousand dollars in ' three years from date, and allow the said Jeremiah Tittemore to ' hold the peaceable possession, until said sum is fully paid, then ' this deed to be void, otherwise to be and remain in full force and ' effect." Also, the deposition of Philip Van D'Waters, who testified, that the two deeds were executed at the same time, and as part of the same transaction, and that he did not become bound to pay to the plaintiff the sum expressed in the proviso to the second deed, or any other sum, or promise to pay the same, otherwise than by said proviso, and that he never did pay any part thereof, and that he never made any other agreement with the plaintiff, respecting the land, than is expressed in the second deed and proviso. Also, the deposition of Benjamin Peake, who testified, that the two deeds were executed on the same day, but at different hours, the first in the morning and the second in the afternoon, and that he took the acknowledgment of both, as justice of the peace.

The court charged the jury, that they might regard both deeds as one transaction, if they were so intended by the parties, and that, in

that state of facts, there was no alienation, within the meaning of the act of incorporation, if they believed all the testimony in regard to the transaction.

Verdict for plaintiff.  Exceptions by defendants.

*O. H. Smith* and *C. W. Prentiss* for defendants.

The plaintiff conveyed the land to Van D'Waters, and the latter conveyed back, with a proviso, that, if he paid $2000 in three years, and suffered the plaintiff to remain in possession until that sum was paid, the reconveyance should be void.  What was this reconveyance but a mortgage ?  If there were no note, or bond, there was plain ground for an implied assumpsit ; and if not, there was clear ground for an action *in rem*, at law, or in equity.  The transaction was not a conditional sale to Van D'Waters.  It did not leave the fee in the plaintiff, more than any mortgage.  The contract of insurance is personal ; and, on alienation, the right of the assured to recover is gone, and cannot be restored by reconveyance.  3 Bro. P. C. 497.  2 Atk. 554.  Ham. on Fire Ins. 2, 125.

*Smalley* for plaintiff.

The two deeds, being executed at the same time, and being *in pari materia*, are to be construed as one instrument.  *Clap* v. *Draper*, 4 Mass. 266.  The deed from the plaintiff to Van D'Waters is to be construed, as if containing a condition for the payment of $2000 by the grantee to the grantor within three years, with the right of possession in the grantor until paid.  This is merely a conditional sale,—the payment of the money within the time limited being a condition precedent to the vesting of the estate.  If an estate for life be limited to A. upon his marriage with B., the marriage is a precedent condition ; and until that happens, no estate is vested in A.  Or if a man grant to his lessee for years, that, upon payment of one hundred marks within the term, he shall have the fee simple, he fee passeth not, until the money be paid.  2 Bl. Com. 124.  4 Kent 124.  1 Hil. Abr. 247.  1 Shep. Touch. 116.  2 Co. Lit. 21. And conditions precedent depend upon no form of words, or location.  1 Hil. Abr. 247.  2 Caine 352.  3 Pet. 374.  *Tompkins* v. *Elliott*, 5 Wend. 496.

The deed from Van D'Waters was no mortgage ; for there was

no debt. It is ·essential to a mortgage, that there should be a pre-existing debt, for which the mortgagee has a remedy against the person of his debtor. 7 Cranch 218. *Page* v. *Foster*, 7 N. H. 392. Sugden on Vend., 10th Ed., n. 229. 19 Wend. 518. Van D'Waters incurred no liability; and· he took no estate, known to law, or equity, until performance of the condition. He could have no action for possession, without averring performance. He had simply the plaintiff's *agreement to sell.*

The opinion of the court was delivered by

DAVIS, J. The plaintiff, it is not doubted, had, at the time this policy of insurance was effected, a fee simple, unincumbered estate in the house and shed, for the destruction of which by fire, this action was brought, as also in the land, on which they stood; so that the contract assumed legal validity in the outset, in accordance with the intentions of the parties, and in pursuance of the provisions of the 10th section of the statute, incorporating the company. The policy covered a period of six years from its date, which was August 6, 1842; and in March, 1846, the buildings, together with a quantity of personal property comprised in the policy, were destroyed by fire; of which seasonable notice was given to the proper officers. The defendants declined to settle and adjust this loss, and now resist a recovery solely on the ground of the conveyance by the plaintiff to Van D'Waters of the insured premises, in January 1843, and the reconveyance from the latter to the former of the same date. These, it is insisted, constituted an *alienation* of the property, within the true intent and meaning of the 12th section of the statute, which provides, that, when any house, or other building, shall be alienated by *sale, or otherwise,* the policy shall thereupon be void, and be surrendered to the directors to be cancelled. The plaintiff does not claim exemption from the just consequences of the transaction, whatever they are, by reason of the proviso to the section referred to, which contemplates a transfer to the grantee of all legal rights under the contract, upon compliance with certain conditions and formalities,—none of which were observed in the present instance.

The main effort, on the part of the defendants' counsel, has been to show, that the reconveyance from Van D'Waters, though of the same date as the deed to him, had not the effect of revesting the fee

of the land in Tittemore, but was a mortgage conveyance, in usual form, intended to secure the payment of the purchase money; and that, though not paid by the time limited, yet an equitable estate remained in the mortgagor, until a decree of foreclosure should put an end to it. Assuming this to be correct, they infer, that an alienation by sale took place, and that, *ipso facto*, by the very terms of the statute, which is to be taken and deemed a part of the contract, being expressly referred to, the policy became void; and that, even if the strict principles of the ancient law were to be applied to this case, without the modifications which courts of equity have introduced into the law of mortgages, and the plaintiff, by the lapse of three years without the payment of the $2000, were to be considered as restored to his full and absolute dominion over the premises, before the destruction thereof, the liability of the corporation would not thereby be revived.

I am not disposed to controvert this last proposition. Upon a clear and distinct alienation being made, though no actual surrender of the policy to be cancelled may have followed, I am inclined to think, the contract ceases to have any binding force, so that a repurchase of the premises before loss would have no effect in restoring vitality to it.

The question then recurs, was here an alienation by sale? It was undoubtedly such, if an alienation at all. There is nothing to bring the case within the operation of any other mode of alienation.

There can be no question, that the deed from Tittemore to Van D'Waters, taken by itself, imports a sale. It is a regular warrantee deed of lot No. 109, in Highgate, on which it is admitted, the buildings in question were situated, conveying the title in fee. But simultaneously with this conveyance is a reconveyance in the same form, with a proviso, or condition, annexed thereto, that if the grantor should, within three years from that time, pay or cause to be paid to the grantee $2000, and allow the latter to hold the peaceable possession in the mean time, then the deed was to be void.

So far as the deeds are concerned, the transaction is in the usual form of a sale of real estate, with an express lien upon the property to secure the payment of the purchase money. But in one important particular it departs from the usual form, that is, in omitting the execution of any note, or bond, or other written evidence of the

indebtedness created by the sale. There was not, in the present case, it seems, even a verbal agreement to pay the two thousand dollars. There is nothing, from which we can infer an indebtedness on the part of Van D'Waters, which would impose a personal duty, or subject him to a personal remedy for the payment, unless it be implied from the word *pay* used in the clause of defeasance. That phrase, however, is equally appropriate to describe the completion of a contract of purchase left wholly optional with the purchaser, as where it is otherwise.

A doubt has been suggested, whether, if this could be comprehended in the class of ordinary sales, with mortgage security for payment, it necessarily follows, that, until payment is made, or, at any rate, until payment falls due, it should be regarded as an alienation, within the meaning of the act of incorporation. Were we to apply merely the ancient legal principles of mortgages to the case, there would be certainly plausibility in holding, that the fee of the land remained all the time in the plaintiff,—that at most an inchoate, contingent interest was created, which, on payment of the stipulated price by the time limited, would, by virtue of the original conveyance, ripen into a perfect title. But mortgages, when any independent indebtedness exists,—for I have no doubt a mortgage may exist, without any such indebtedness,—have long been here, as everywhere, regarded as a pledge of real estate as security for the debt. The legal title, for most purposes, even after condition broken, is treated as still in the mortgagor, until a final foreclosure.

Nor would the circumstance, that, in this case, a clause was inserted, allowing to the mortgagee possession of the premises, to which, without such a clause, he would not be entitled until default of payment, affect the question now under consideration, as the right to immediate possession, unless prevented by statute or express agreement, belongs to the mortgagee. Looking at the matter in the point of light in which it is viewed by the courts, by the community, and it is to be presumed by the legislature, I should have no difficulty in saying, that, if this transaction be not plainly distinguishable from the ordinary one of a sale upon a credit of three years, with the usual lien upon the premises as security for ultimate payment, it ought to be regarded as an *alienation,* and consequently a forfeiture of all right of action under the policy of insurance.

But we are satisfied, that this cannot be fairly ranged under the head of mortgages. Taken in connection with the depositions of Van D'Waters, and Peake, it is evident, that no obligation existed, on the part of the former, to pay the $2000, which could be enforced by suit. It was wholly optional with him, whether to pay it, and thus perfect his title to the property, or omit to do so,—in which case all things would remain as before any contract was made. The absence of any express stipulation to pay, together with the renunciation of all rights to the possession, until the title should be acquired by actual payment, are, in our opinion, decisive indications, that the parties intended a conditional sale.

Both instruments; being executed simultaneously, may well be regarded as constituting one entire contract, to be construed precisely as it would be, were a similar condition inserted in the deed from Tittemore to Van D'Waters. In the one case the payment of the money would constitute a condition precedent, without which no title would pass; in the other, the reconveyance is perfect in form, subject only to be rendered inoperative by a condition subsequent. It is a mere matter of formal arrangement. In substance there is no difference.

The case of *Porter* v. *Nelson*, 4 N. H. 130, is much in point. In that case a conveyance was made, for the purpose of effecting a sale of the farm by the efforts of the grantee, and, to secure the owner, the grantee reconveyed immediately, with a condition that the reconveyance should be of no effect, in case the original grantee paid the sum of $2000; it being understood by the parties, that any excess above that sum, for which the farm might be sold, should be retained by the grantee for his trouble. This, in form, was a mortgage, and exactly like the form adopted here; but it was held not to be a mortgage in fact. The case was a stronger one than the present, inasmuch as both plaintiff and defendant,—(the latter was not the grantee but an assignee of the grantor,)—had treated the reconveyance as a mortgage. The case of *Page* v. *Foster*, 7 N. H. 392, is similar in principle; where, whether a mortgage, or not, is made to depend on the inquiry, whether a debt existed, for which the party had a remedy independent of the conveyance.

The case of *Stetson* v. *Mass. M. F. Ins. Co.*, 4 Mass. 330, fully recognizes the propriety of considering successive deeds, and other

legal instruments, as parts of one entire contract, for the purpose of carrying into effect the true intention of the parties. The defendants there set up in defence, that the plaintiff had conveyed a moiety of the insured premises in fee, reserving a term of seven years, to one Harris,—averring, that the trustees of the company on that account had declared the policy void. By the replication it appears, that Harris immediately reconveyed to the plaintiff in mortgage, to secure an acknowledged debt, and thereupon the plaintiff demised to Harris and another person the premises for seven years, reserving rent. The whole was regarded as a conditional sale after the expiration of seven years. The court, it is true, thought that neither under the rules of the company, which differed essentially from the clause under which the question arises here, nor by virtue of the common law principle, which denies to the insured a right to recover, if the property insured have been alienated before loss, was the plaintiff's right to recover affected. I infer from the reasons and grounds of the decision, as stated by Judge SEWALL, that, had there been there, as there subsequently was, *(Jackson* v. *Same,* 23 Pick. 418,) a rule, or by-law, almost literally like the clause now in question, it would have interposed no obstacle to a recovery for the whole loss.

The case of *Bigelow* v. *Kinney,* 3 Vt. 353, affords an example in this court of construing a deed of conveyance and a mortgage back as constituting parts of one contract, when contemporaneous, so that one party, an infant, could not be allowed to affirm one instrument and disaffirm the other. Later authorities go somewhat farther, and dispense with absolute identity of time, in the assertion of this principle. *Lovering* v. *Fogg,* 18 Pick. 540.

As we construe this contract, then, as no part of the $2000 was paid, or tendered, within the time limited, whatever prospective conditional interest Van D'Waters ever had in the premises had ceased, before the destruction of the property, and the fee of the land never having been out of the plaintiff,—for I do not regard a conveyance and reconveyance, when simultaneous, as divesting him of title at all,—there was no alienation, which, by the terms of the statute, could vitiate the policy.

Upon the views herein indicated, with respect to the true character of this transaction, it will hardly be pretended, that a mere con-

70

tingent interest, a naked right to purchase and appropriate the property on payment of a certain sum by a given time, unaccompanied by possession, or any right to the possession, in the meantime, presents a case within this clause of the statute.   It has been determined, both in New York and Massachusetts, that a conveyance in mortgage, under clauses of similar import, does not avoid the policy.   *Jackson* v. *Mass. M. F. Ins. Co.*, cited above.   *Conover* v. *Mut. Ins. Co. of City and County of Albany*, 3 Denio 254.

There is as little ground to contend, that, by the principles of the common law, which prohibit a recovery upon a wagering policy, where the insured never had any interest, or where the insured, previous to the loss, has assigned and transferred his interest to another, the plaintiff is precluded from recovering.   Even as a mortgagee, he would have a substantial insurable interest.   *Swift et al.* v. *Vt. M. F. Ins. Co.*, 18 Vt. 305.

The judgment of the county court is affirmed.