# WHEELING.

Hope et ux. r. Valley City Salt Company.

Submitted June 27, 1884.—Decided April 25, 1885.

| 25 | 789 |
| 36 | 260 |
| 25 | 789 |
| 38 | 369 |
| 25 | 789 |
| e61 | 650 |
| 61 | 654 |

1. The relation existing between a director and the corporation is that of a trustee. (p. 804.)

2. Where a director of a corporation dealing with the corporate property obtains an interest in, or control over the same for his own benefit or advantage, either with or without the consent of the other members of the board of directors, the transaction will be viewed with jealousy, and it will for slight grounds be set aside by a court of equity at the instance of those standing in the relation of beneficiaries of such property, or at the instance of some one claiming through or under them, who but for such advantage so obtained by such director would have the right to charge said property with the payment of their debts. (p. 802.)

3. When a director of a corporation claiming to be a creditor thereof has obtained from his co-directors a deed of trust or mortgage upon the corporate property to the exclusion of other creditors, such transaction will be presumed to be fraudulent, but such presumption may be rebutted by clear and convincing evidence that the same is fair and reasonable and wholly free from all taint of fraud or unfairness. (p. 808 )

4. The general rule applicable to this class of contracts is, not that they are absolutely void, but that they are voidable at the election of the party whose interest has been so represented by the party claiming under it. (p. 808.)

5. A corporation may contract debts with its individual corporators, and it is as much its duty to pay or secure such debts as debts due to strangers, and the fact, that a deed of trust has been given on the corporate property to secure such debts, will not render it fraudulent, unless such fraudulent intent is shown. (p. 797 )

6. A sale of property under a deed of trust, made by the trustee, which was purchased by the trust-creditor at the price of $6,100.00, and sold and conveyed by him on the same day to a third party at the price of $21.000.00, shows that the property was sold at a price so grossly inadequate as of itself alone to be evidence of such fraudulent conduct on the part of the trustee and trust-creditor, as justifies the court for that cause alone in setting aside such sale; and the same is equally true when the trust-property was sold by the trustee to the trust-creditor at the price of $800.00, when he admits in his answer to a bill filed against him and his

trustee to set the sale aside, that one parcel of the land so purchased by him, was, at the time of such sale worth *four thousand* dollars.   (p. 803.)

Woods, Judge, furnishes the following statement of the case :

The Valley City Salt Company was incorporated under the laws of this State on February 4, 1869, with a capital stock of $33,700.00 subscribed, on which $3,370.00 was paid in. The purposes of the corporation were "to dig or bore for salt and other minerals and to manufacture and market the same to mine for coal and market the same, and also to sell goods." Its principal place of business was at Hartford City, in Mason county, West Virginia. Between April 10, 1869, and February 7, 1870, the company had purchased and obtained conveyances for four parcels of land, conveying respectively about two acres, one and 109–160 acres, one and one-fifth acres, and thirty acres, on which it erected a large and excellent salt furnace at a cost of about $90,000.00, including salt wells, sheds, coal and salt cars, and the sinking of a coal shaft to mine coal for the furnace. On February 7, 1870, the corporation by its President, J. R. Meeks, executed to Peter Harpold its obligation for the sum of $14,-386.46, on which various credits were endorsed; and on the same day conveyed the aforesaid property to John U. Myers, trustee, to secure to Peter Harpold the payment thereof, which deed of trust, on the same day was duly recorded.

In the year 1873 the board of directors of the said corporation elected E. C. Harpold its president and also constituted him its agent and general manager, and as such he took charge of and conducted all of its business until it ceased to do business in the fall of 1878, and had charge of its books, and employed a bookkeeper and was never displaced from his position of its president and general manager.

During the years 1877 and 1878 the board of directors of the corporation was composed of said E. C. Harpold and his brother C. L. Harpold, and his uncle Peter Harpold, Rankin Wiley, Sr., the father-in-law of E. C. Harpold and Christian Knarcan the bookkeeper of E. C. Harpold.

On August 13, 1878, the said corporation, acting through

E. C. Harpold as its president and said Knarcan as its secretary, executed a note payable to the order of said E. C. Harpold for $12,000.00, dated that day, payable five days thereafter, and on the same day executed a deed of trust conveying to H. R. Howard trustee all the real and personal property of the corporation to secure first, the payment of said note of $12,000.00, and then to indemify said E. C. Harpold and one H. Lerner as endorsers on certain notes executed by said corporation.

On September 27, 1878, said Howard trustee, in the deed of trust dated August 13, 1878, sold and conveyed to the defendant E. C. Harpold all the real estate therein mentioned not included in the deed of trust to John H. Myers trustee, for the aggregate sum of $800.00. On October 7, 1878, said Myers trustee sold and conveyed all the real estate mentioned in the deed of trust dated February 7, 1870, to the defendant Peter Harpold for the sum of $6,100.00, who on the same day conveyed the same to E. C. Harpold at the price of $2,100.00, being the amount alleged by him to be due upon his trust-debt, payable in five annual instalments with interest. To secure the payment of these instalments, E. C. Harpold and wife by deed dated October 9, 1878, conveyed all of the property so purchased by him with three other houses and lots in Hartford City to Rankin Wiley, Jr., trustee, who in pursuance thereof on March 30, 1881, sold and conveyed all of the property thereby conveyed to said Peter Harpold at the price of $1,4000.00, subject to a trust-lien of $3,000.00, one parcel of said lands.

On October 2, 1878, the defendants, E. C. Harpold, Rankin Wiley, Jr., A. Vannoy, C. L. Harpold and J. M. Harrold, were incorporated under the laws of this State, under the name of "Ætna Coal and Salt Company," for the "purpose of boring salt wells, the manufacture of salt, the manufacture of bromine, the mining of coal, and for the transaction of any and all business necessarily connected therewith or calculated to facilitate the same, including the transportation to market and sale thereof; also for keeping a store of dry-goods, groceries and other supplies usually kept in a country store, and for selling the same, said manufacturing establishment to be located on the premises formerly owned by the Valley City

Salt Company, and now owned by E. C. Harpold, located in the town of Hartford City, West Virginia, hereafter to be conveyed to this corporation, which shall keep its principal place of business at said Hartford City." The capital stock of this new corporation was $40,000.00, divided into shares of $100.00 each, of which E. C. Harpold had subscribed 396 shares, and Rankin Wiley, Jr., Anthony Vannoy, C. L. Harpold and James M. Harrold each one share. Upon the organization of the Ætna Coal and Salt Company these stockholders were elected directors, and the directors elected E. C. Harpold president and general manager of the new company, and on October 10, 1878, E. C. Harpold and wife by deed of that date conveyed to this new corporation, said four parcels of land containing respectively about two acres; one acre and 129 poles; one and one-fifth acres, and thirty acres, on which said furnace, wells, coal-shaft, &c., were situated, and five lots in the town of Hartford City, at the ostensible price of $34,175.00, alleged to have been paid to him by the new corporation in the certificate of its capital stock. On July 1, 1878, the Valley City Salt Company owed John Hope $2,415.00, for which it executed to him its promissory note of that date payable six months thereafter with interest at the rate of ten *per centum per annum*, and on September 1, 1878, it became indebted to him in the further sum of $267.37, both of which debts were assigned to Elizabeth Hope, the wife of John Hope.

To recover these debts John Hope and his wife, Elizabeth Hope, filed their bill in the circuit court of Mason county at the August rules 1879, against the Valley City Salt Campany, E. C. Harpold, Peter Harpold, C. L. Harpold, John U. Myers, H. R. Howard, Rankin Wiley, Jr., Anthony Vannoy, James M. Harrold, the Ætna Coal and Salt Company, Rankin Wiley, Sr., and Christan T. Knarcan, alleging substantially the foregoing facts, and that the property was sold at a grossly inadequate price, and that the obligation executed by the Valley City Salt Company to Peter Harpold for $14,386.46, was made without any valuable consideration; that he advanced no money to the company and the company owed him nothing, and that the deed of trust made to the trustee, John H. Myers, to secure the same, and all proceedings under

the same were fraudulent and made and done with intent to hinder, delay and defraud the plaintiffs in the collection of said debts.

They further aver that the note of $12,000.00 to the defendant, E. C. Harpold, and the deed of trust to secure the same were made without consideration, and that the pretended note, and the deed of trust. to Howard, and all the proceedings had under the same, and all the sales, transfers and conveyances of the said property were made and with intent to hinder, delay and defraud the plaintiffs in the collection of their debts, and that all the defendants participated in this fraudulent intent and with full knowledge thereof; that the creation and organization of the Ætna Coal and Salt Company was made and procured to be done by E. C. Harpold to enable him to absorb the whole property of the Valley City Salt Company and thus avoid the payment of the debts due the female plaintiff, that the pretended note of $12,000.00 to E. C. Harpold, and the deed of trust to Howard, trustee- to secure the same were in fact made by said Harpold to him, self for his own benefit, and in fraud of the rights of the plaintiff and the other creditors of the corporation, and prays that the sales under said deeds of trust made by Myers and Howard, trustees, may be set aside, and that the Ætna Coal and Salt Company, with its president, directors and agent, may be declared a trustee, holding. said property in trust for the female plaintiff to the extent of her debts, and that the property may be sold for the payment of her.debt, and for general relief.    The bill was taken for confessed 'as to all the defendants except Peter Harpold and E. C. Harpold, who filed separate answers to which the plaintiffs replied generally.    The answer of the defendant, Peter Harpold, admits the organization of the Valley City Salt Company, the purchase by it of the real estate, the improvements made thereon, and the cost thereof, the execution to him of the obligation of $14,368.46, and the deed of trust to secure the payment thereof, the sale under the deed of trust and his purchase of the trust property at the price of $6,100.00, and his sale thereof on the same day to E. C. Harpold. at the price of $21,000.00, and of the execution of the deed of trust to Rankin Wiley, trustee, to secure the payment thereof, the

sale under this deed of trust and his purchase of the property thereby conveyed, as the same are alleged in the bill, and he does not deny that the price of $6,100.00, at which he purchased the trust property at the sale thereof made by his trustee, Myers, was not a grossly inadequate price. He denies the allegation of the bill, that he never made the loan of $14,386.46 to said corporation, or that any of the debts intended to be secured by the deed of trust to Howard, trustee, were not just and valid debts due to the creditors there mentioned, and avers that all of said debts in both trusts were just and valid debts. He averred that the balance of his trust debt at the time of the sale was $21,000.00, and that the lands had greatly depreciated in value, and were not worth $35,000.00 as alleged in the bill.

The answer of E. C. Harpold admits the same facts; and that he was the president and that he managed and conducted the general business of the corporation, from January 1873 until it ceased to do business in the fall of 1878, that he had been the president and business manager of the "Ætna Coal and Salt Company since its organization and employed the same book-keeper in the latter as had been employed in the former company, and that he had had as much control of the books of both companies as is usual and proper for the president and general manager of a corporation to exercise. He denies every allegation denied in the answer of Peter Harpold, and insists that all the debts secured by said deed of trust to Myers and Howard are honest, valid debts justly due from the corporation to the creditors respectively, and especially that his debt of $12,000.00 is a valid debt justly due to him. He denies that he as president of the board of directors of the Valley City Salt Company and as agent of said company executed any note to himself; but he avers that the Valley City Salt Company acting through this defendant as president of said company and C. F. Knarean as its secretary, on August 13, 1878, executed a note of that date payable to the order of himself, five —— after the date thereof, for the sum of $12,000.00 and on the same day executed said deed of trust to H. R. Howard, trustee, to secure the payment thereof, as set forth in the trust deed and he avers that the note of $12,000.00 and the deed of trust

were both executed by the authority and direction of the board of directors of the Valley City Salt Company by a resolution, passed by said board of directors at a legal meeting held by them on August 12, 1878 and in accordance with the terms and provisions of said resolution." He admits, that he denied that the lands were worth $35,000.00 as alleged in the bill and avers that the tract of thirty acres was not worth more than $4,000.00, and that was the price the company paid for it at the time it was purchased by it.

He does not deny that at the time the note of $12,000.00 and the deed of trust to secure the same were executed, Peter Harpold, C. L. Harpold, Rankin Wiley, Sr., Christian Knarean and himself were the directors of the company, nor that Peter Harpold was his uncle, C. L. Harpold was his brother, Rankin Wiley, Sr., was his father-in-law, or that Knarean was his employee and book-keeper. He does deny that on October 10, 1878, he sold and conveyed the said four parcels of land which he had purchased on September 27, 1878, at the sale made under the deed of trust to Howard for $800.00, with said five town lots in Hartford City to the Ætna Coal and Salt Company at the price of $341.75. Both answers admit the amount and justice of the plaintiff's demands, and deny all fraud and fraudulent intent charged against them. On September 20, 1882, the cause was finally heard, and it was adjudged, ordered and decreed that the deed of trust made by the Valley City Salt Company to H. R. Howard, trustee, dated August 13, 1878, and the sale made thereunder by Howard, as trustee, and the deed made by said Howard to E. C. Harpold on September 27, 1878, were fraudulent and void as to the plaintiff's demand, and the same were set aside and cancelled, and that the said tracts of thirty acres, and of one and one fifth acres, and the right of way mentioned in the last mentioned deed are held in trust by the Ætna Coal and Salt Company, its officers and agents for the payment of the plaintiff's debt; and decreed that the said Valley City Salt Company pay to the said Elizabeth Hope the sum $3,765.50, with interest from that date and costs, and that unless the same be paid within sixty days from the rising of the court, that special commissioners appointed for the purpose should sell the said lands on the usual terms, &c., and report their proceedings to court.

From this decree the defendant, Peter Harpold, appealed to this Court.

*Knight & Couch* for appellant.

C. E. Hogg, D. W. Polsley and W. H. Hutchinson for appellees.

Woods, Judge:

The questions presented for our consideration are:—

Was the deed of trust made to secure Peter Harpold his alleged debt of $14,368.46 fraudulent in law or in fact?

Was the deed of trust to Howard, trustee, dated August 13, 1878, to secure E. C. Harpold, his alleged debt of $12,000.00, fraudulent in law or in fact, and if said deeds or either of them, was for any cause fraudulent or void, how, and to what extent have the rights of the appellant been affected by the several sales and conveyances made under said deeds of trust?

What rights, if any, did E. C. Harpold or his vendee, the Ætna Coal and Salt Company acquire under the conveyances made to them respectively? Correct answers to these questions must be conclusive in this controversy.

It is contended by the appellees, Hope and wife, that the deeds of trust to Myers for the benefit of Peter Harpold, and to Howard for the benefit of E. C. Harpold, are fraudulent in law and in fact, and therefore void. Their counsel in argument contend that the corporation could not lawfully contract with Peter Harpold, nor with E. C. Harpold, because they were members of the corporation; they were in effect contracting with themselves, and that this was especially true of the alleged note of $12,000.00, and the deed of trust to Howard, as E. C. Harpold was at the time, the president, general manager and a director of the corporation.

It seems to us that it can not be successfully maintained that a corporation aggregate, can not lawfully enter into a contract with or borrow money from its own stockholders, and that if it does do so, the contract entered into, the obligation executed, and the deed of trust or mortgage made to secure the same is for that cause alone fraudulent and void. Few corporations aggregate created for the purpose of carrying

on any important branch of manufacturing or mining indus-
tries, have ever been formed, or will probably ever be formed,
which have not been obliged in the earlier stages of develop-
ment to borrow money, and frequently large amounts of
money, to put the business upon a paying basis.   Under such
circumstances it would on business principles alone be un-
reasonable to expect strangers wholly unacquainted with, and
uninterested in the proposed enterprise to advance such
necessary funds without security other than that of the cor-
poration, and if to be secured by others, by whom so natur-
ally as by the individual stockholders of the corporation, who
were personally interested in, and had at least partial control
over the conduct and management of its business.   If such
a liability be incurred to a stranger, so secured by individual
stockholders, why may not the corporation further secure him
and such sureties by a deed of trust or mortgage on part of
its property, unless prohibited by law from doing so, and if
such sureties may be so secured collaterally, what good reason
can be given why the loan may not be made by stockholders
to the corporation, and secured by it to him in like manner?

This is no new doctrine, for as by the common law a cor-
poration aggregate can contract with persons who are not
members, so it may contract with persons who are mem-
bers of it, and the contract will not on this account alone be
invalid, as a member of a corporation contracting with it,
will be regarded as a stranger.   The same is clearly laid
down by Judge Story in the Dartmouth College case, where
he says : " A corporation aggregate is an artificial person ex-
isting in contemplation of law, and endowed with certain
powers and franchises, which though they must be exercised
through the medium of its natural members, are yet consid-
ered as subsisting in the corporation itself as distinctly as if
it were a real person."   Hence such a corporation may sue
and be sued by its own members, and may contract with them
in the same manner as with strangers.   Angell & Ames on
Corporations, section 233 ; *Dartmouth College* v. *Woodward*,
4 Wheat 518–667 ; *Merick* v. *Peru Coal Co.* 61 Ill. 472.

The same reason applies with equal force to the trust-deed
to Howard, trustee, for the benefit of E. C. Harpold so far as
the validity of the same is called in question upon the sole

ground that he also was a stockholder in said corporation. It is not alleged that the deed of trust of February 7, 1870, to Myers, trustee, is void because Peter Harpold the beneficiary therein was at the time of the execution thereof a director of the Valley City Salt Company, or because he then held or occupied any other fiduciary relation to it, but its validity is assailed upon the ground that his pretended debt had no existence; that he had never advanced or loaned to the company the sum of $14,386.46, or any part of it, and that the obligation executed to him for that sum and the deed of trust to secure the same, were made without any valuable consideration, and therefore were fraudulent and void as to the plaintiffs' demand. All these, and every other allegation of the bill calling in question the validity and good faith of the whole transaction are explicitly denied by the answer, and aside from the record-evidence of the execution of the obligation and of the deed of trust to Myers, trustee, the plaintiffs have not offered the testimony of any witness, nor does there appear in the record any evidence whatever, that the said company on February 7, 1870, did not justly owe Peter Harpold the debt of $14,386.46, or that the execution of the obligation to him for that sum, and the execution of the deed of trust to secure the same, were not made to and accepted by him in perfect good faith. The company was incorporated on the 4th day February, 1869; the lands purchased by the company, upon which it constructed its furnaces, &c., were all purchased in April, 1869, and the same were conveyed in trust to Myers on February 7, 1870, to secure said debt of $14,386.46, and while it does not appear exactly when the $90,000.00 expended by the company in the construction of its furnace, sinking wells, &c., was done, yet we may reasonably conclude that as the whole capital-stock of the company was only $33,700.00, in making the expenditure of $90,000.00, it must have borrowed large amounts of money from some person, and as Peter Harpold was one of the corporators, and subscribed for forty shares ($4,000,00,) of the capital stock of the company, it would not seem unreasonable or improbable that the company should become indebted to him in an amount as large as that secured to him. Upon the three small parcels of land embraced by his trust-deed were erected

improvements, which by the admission of all parties cost the sum of $90,000.00, and he evidently at that time, and always afterwards until and at the sale thereof on October 7, 1878, considered the same an ample security for his debt, which when contracted was payable in one or two years after its date at the election of the debtor.   He permitted this large debt to remain unpaid, contenting himself the first five years with the annual interest thereon, and thereafter until the sale under the trust with less than half the annual interest.   At the sale he purchased the land for $6,100.00, which was less than one third of the balance remaining unpaid on the trust-debt.

It being lawful for the corporation to borrow money from or enter into a contract with one of its stockholders, and no evidence being adduced to show that this transaction was not perfectly fair, we are of opinion, that the obligation of the Valley City Salt Company to Peter Harpold, and the deed of trust executed to John U. Myers to secure the same are neither fraudulent in law nor in fact, and that the said deed of trust is a valid security for the balance still unpaid upon said trust-debt of $14,386.46.

A wholly different state of facts is presented in regard to the execution of the note of $12,000.00 to E. C. Harpold and the deed of trust made to Howard, trustee, to secure the same.   Was their note and deed of trust fraudulent in law or in fact?   To determine this question properly, let us review all the circumstances preceding, surrounding and following it.

Unless it be admitted that the property mentioned in the deed of trust to Myers, sold on October 7, 1868, to Peter Harpold for $6,100, was sold at a most ruinous sacrifice, a grossly inadequate price, the Valley City Salt Company on August 13, 1878 and long before that time, was utterly, hopelessly insolvent; and this fact was as well known to E. C. Harpold on July 1, 1878, when it became indebted to, and gave its note to the plaintiff, John Hope for $2,415.00 payable six months thereafter, as it was when it became indebted to him in the further sum of $267.37 in September, 1878, for he was at that time and since January, 1873, he had been the president, and a director and the general manager of all its business transactions having at all times access to, and control over the books of the company, and its true

financial condition was well known to him. He knew the value of its property real and personal, and could have known and doubtless did know what each and every tract or parcel of land, or article of personal property had actually cost the company. With all this knowledge, with the influence which his position as director, president and general manager, which must under all the circumstances detailed in this record have been almost if not quite equal to that of sole owner and proprietor, with his brother, his uncle, his father-in-law and his book-keeper, all members with him of the board of directors of the company, he says in his answer that, "the note of $12,000.00 and the deed of trust to secure the same dated August 13, 1878, were both executed by the authority and direction of the board of directors of the Valley City Salt Company by a resolution passed by said board of directors at a legal meeting thereof held by them on August 12, 1878, and in accordance with the terms and provisions of said resolution." This and every other affirmative allegation of his answer was expressly denied by the plaintiffs' general replication. The note of $12,000.00 was not produced on the trial, nor its absence explained or accounted for, nor was the said resolution of the board of directors authorizing and directing the execution of the note and deed, nor was there any evidence of any kind offered in support thereof, and we must therefore treat this case as if no such authority and direction had ever been given. The most favorable light, under which we can consider it, is furnished by the recital and execution of the deed of trust itself. It recites: " This deed made this 13th day of August, 1878, between the Valley City Salt Company, an incorporated company, duly incorporated under the laws of West Virginia, by its president, E. C. Harpold, and C. F. Knarean, its secretary, of the one part, and H. R. Howard, of the other part, witnesseth," &c., and concludes : " In witness whereof the Valley City Salt Company, by its president and secretary, have hereunto signed the corporate name of said company and affixed the seal of said company on the day and year above mentioned.

| { Valley City Salt Co. | " Valley City Salt Company, |
| Seal. | " By E. C. Harpold, *President*, |
| West Virginia. } | " C. F. Knarean, *Secretary*." |

This deed contains the further recital, that it was (among other things) to secure one note given by the Valley City Salt Company, by its president and secretary to said E. C. Harpold for $12,000.00 bearing even date herewith and due in five days after date, which note was authorized to be given to the said E. C. Harpold by resolution of the board of directors at a meeting of the board of directors of said company, held at the office of said company on the 12th day of August, 1878, but it contains no recital that the deed of trust was so authorized to be executed. If any such meeting of the directors was ever held on the 12th of August, 1878, and any such resolution was ever adopted, or any such debt ever existed or remained unpaid, E. C. Harpold had in possession and subject to his control abundant evidence to prove it. Said Knarean was the secretary of the company and had also for four years been his head clerk and salesman in his store where this alleged debt of $12,000.00 was incurred, and the record of the proceedings of said company were also under his control, and they if produced, would have furnished evidence of this meeting and of the adoption of this resolution if such ever existed. The fifty-second section of the fifty-third chapter of the Code of West Virginia declares that, " They (the board of directors) shall keep a record of their proceedings, which shall be verified by the signature of the president or president *pro tempore*. No member of the board shall vote on a question in which he is interested otherwise than as a stockholder, or be present at the board while the same is under consideration; but if his retiring from the board in such case reduce the number present below a quorum, the question may nevertheless be decided by those who remain. On any question the names of those voting each way shall be entered upon the record of their proceedings if any member at the time required it." The record does not disclose which members of the board were present, and participating in the proceedings, at the meeting alleged to have been held on August 12, 1878. All these facts could easily have been shown by E. C. Harpold either by the record, his own oath or the testimony of the other directors. Said C. F. Knarean was produced and examined as a witness on behalf of the plaintiffs, and having proved that E. C. Harpold was the

president and general manager of the company, he was asked by the plaintiff's counsel to "State all you may know in reference to the execution of a deed of trust by the Valley City Salt Company to H. R. Howard, trustee, on August 12, 1878, to secure $12,000.00 to said E. C. Harpold and other defendants therein mentioned." He answered: "I know that they made the deed of trust. It was executed to secure E. C. Harpold the $12,000.00. I don't know anything only they made the deed of trust."

The witness was cross-examined by E. C. Harpold, and in answer to questions propounded by him he stated that he was the book-keeper of the company from September, 1877, to September, 1878, and was the head salesman in E. C. Harpold's store from July 14, 1874, until September, 1878; that when he took charge of the books they showed the company owed E. C. Harpold about $7,000.00, and up to September, 1878, about $14,000.00, and that the note and trust-deed for $12,000.00 were given for that account. This witness probably knew all about the meeting of directors, if one had been held on August 12, 1878. He was evidently not present at such a meeting. Was E. C. Harpold present at and participating in its proceedings in regard to his own debt? If he was, he was doing what the law expressly forbade him to do. Did he withdraw from the board while it was considering the resolution alleged to have been adopted directing and authorizing the execution of the note and deed of trust of $12,000.00? If he withdrew, there could have been none present and acting save his brother, C. L. Harpold, his uncle, Peter Harpold, and his father-in-law, Rankin Wiley, Sr. Such a resolution, adopted under such circumstances, for the benefit of a director, president and general manager of the company, carries with it such suspicions of unfair dealing, that in order to be upheld in a court of equity against the claims of honest creditors, who are thereby deprived of every means of obtaining satisfaction of their debts, it requires to be supported by evidence so strong and clear as to remove every reasonable doubt of the fairness and honesty of the transaction; but E. C. Harpold, full handed with this proof, if his answer be true, produces no evidence of its fairness, and we can not resist the conclusion, that if he had produced this evidence, it would

have been against him   1 Stark Ev. 545; 1 Greenl. Ev.
section 37; *Knight* v. *Capito*, 23 W.Va. 653. With all these cir-
cumstances of suspicion, without explanation and without the
slightest effort to explain them or to remove these indications
of fraud, we are brought to the conclusion that the said deed
of trust to Howard, trustee, was fraudulent. But coupling with
the foregoing facts, the following facts, that this deed of trust
conveyed not only all of the real property of the company,
but also all of its tangible personal property, including twelve
horses and mules, four two-horse wagons, two carts, twenty-
seven coal-cars, 600 feet of iron auger, two salt cars, and two
salt-cars at the Ohio river, used in loading salt at the river ;
three double sets of wagon-harness, one iron safe and two
desks in the office ; 23,000 feet of pine plank, 250 feet of tubing
taken from the salt-well; 400 feet of new augur poles, 320
feet of two-inch pipe, and a large amount of other articles of
property, none of which has ever been sold; and also that the
land bought by Peter Harpold for $6,100.00 was conveyed
the same day to E. C. Harpold for $21,000.00, and that E. C.
Harpold bought all of the real estate of the company embraced
in his trust for $800.00, one parcel of which he admits was
worth at least $4,000.00, and that E. C. Harpold was willing
to secure the payment of said $21,000.00 to Peter Harpold by
conveying to a trustee for his benefit the lands so purchased
from him, and also all the lands purchased under his own
deed of trust, and also of five town lots in the town of Hart-
ford City, and that he in three days afterwards sold and con-
veyed a part of said lands including said five town lots to the
Ætna Coal and Salt Company, of which he was president,
director and general manager, in which he owned 396 out of the
400 shares of its capital stock, at the price of $34,175.00, which
company was incorporated on the 2d of October, 1878, appar-
ently for the convenient purpose of swallowing up all the
assets belonging to the Valley City Salt Company, at the
expense of its creditors and free from its debts, it is impossi-
ble to resist the conclusion, that the said lands of the Valley
City Salt Company were sold to said Peter Harpold and E.
C. Harpold at prices so grossly inadequate as to be of itself
almost conclusive evidence of fraud, and ought not to be per-
mitted to stand in the way of the plaintiffs in the collection

of their debt; and that the deed of trust to Howard to secure the payment of the alleged debt of $12,000.00 to E. C. Harpold, and the said deed of trust to Rankin Wiley, Sr., to secure the payment to Peter Harpold of said $21,000.00, and the sale and conveyance made thereunder to said Peter Harpold, and said conveyance made by E. C. Harpold to the Ætna Coal and Salt Company on the 10th of October, 1878, are each and all of them, as to the plaintiffs' demand against the Valley City Salt Company fraudulent in fact as having been made to hinder and delay them in the collection of their debts against said company.

It only remains to consider whether the deeds of trust to Myers, trustee for Peter Harpold, and to Howard, trustee for E. C. Harpold are fraudulent in law.

The directors of a body corporate act in a fiduciary capacity to the corporation and to stockholders, and they are generally disabled from so dealing with the interests confided to their care with a view to their own advantage, and any purchase made, or act done, in the prosecution of such a purpose, may be set aside by the stockholders and those claiming under them as creditors. *James, &c.* v. *Railroad Company*, 6 Wal. 752; *Drury* v. *Cross*, 7 Wal. 299. In *Newcomb* v. *Brooks*, 16 W. Va. 32, this Court held that a person who occupies a fiduciary relation, is bound not to exercise for his own benefit, and to the prejudice of the party to whom he stands in such fiduciary relation, any of the powers or rights, or any knowledge, or any advantage of any description, which he derives from such confidential relation; and a purchase of the trust-property by such fiduciary while holding such relation, either from himself or from the party to whom he holds such relations, is voidable at the option of the party to whom he stands in such relation, although he may have given an adequate price for the property and gained no advantage whatever. This general rule so laid down by this Court is sustained by an overwhelming weight of authority in England and this country, and in very many cases the rule has been adhered to with such strictness as to exclude testimony tending to show that the particular case under consideration was absolutely free from every possible taint of fraud or unfairness. In *Ex parte Lacy*, 6 Vesey 627, Lord El-

don laying down this rule, said: "The rule is founded in this, that though you may see in a particular case, the trustee has not made advantage it is utterly impossible to examine upon satisfactory evidence in the power of the court (by which I mean in the power of the parties), in ninety nine cases out of a hundred whether he has made advantage or not." Justice Wayne delivering the opinion of the Supreme Court of the United States in *Michond* v. *Girod, &c.*, 4 How. 555, said: "The general rule stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite conflict between self-interest and integrity. It restrains all agents public and private. * * * * It prohibits a party from purchasing on his own account that which his duty or trust requires him to sell on account of another; and from purchasing on account of another that which he sells on his own account."

In the application of this principle, it makes no difference whether the fiduciary stands alone, or is one of many who occupy the same fiduciary relation. Each fiduciary has no more right to purchase from his co-fiduciary than he would have to purchase from himself, if he alone occupied the position. *The Cumberland Coal Company* v. *Sherman*, 30 Barb. 553. See opinion of Green, Judge, in *Newcomb* v. *Brooks, supra.*, and the cases there cited. In the cases where this rule applies, the purchase of the property by the fiduciary is not absolutely void, but only voidable by the *cestui que trust* or those occupying a similar position, and even in those cases where the strictness of this rule has been somewhat relaxed, the courts have uniformly held that the purchase by a fiduciary of trust-property will always be scanned in a court of equity with suspicion, and will never be sustained unless it fully appears fair and reasonable, and that no advantage has been taken by the fiduciary of his position, over the *cestui que trust,* and that he has withheld from him no information which he had the right to know, and which it was the duty of the fiduciary to impart to him. It was held in *Butts* v. *Wood*, 37 N. Y. 317, that the relation held by a director in a corporation, is that of a trustee; and that where one member of a board of directors presents to such board a bill for extra services, he is disqualified to act as director upon the question of

allowing said bill and directing the same to be paid. In the case of *The City of Fort Wayne* v. *Rozenthal*, 75 Ind. 156, that an officer of a city can not as agent contract with himself, personally buying what he is employed to sell, or hiring himself to do a service which he is employed to procure to be done. The board of health consisting of three physicians, were by law authorized to employ some competent person to vaccinate certain children whose parents were unable to pay for the same. Two of the board held a regular meeting and employed one of their own number to render this service, which he performed, and when he presented his bill for his services the city refused to pay, because he had in effect contracted with himself, and so the supreme court of Indiana held. So in *Pickett* v. *School District, &c.*, 20 Vt. 551, it was held that where two members of the board of directors of the district entered into a contract with the third member to build a school-house for a certain price. Upon suit brought by him to recover the contract price, it was held that his contract was void, on the ground that he had in effect contracted with himself. *Davis* v. *Rock Creek L. F. & M. Company*, 55 Cal. 35 ; *Wilbur* v. *Harris*, 49 Cal. 290; *City San Deigo* v. *San Deigo Railroad Company*, 44 Cal. 106. Numerous similar cases might be cited, for whatever rule may have been adopted in other states, it seems to us that a different rule was adopted in the State of Virginia before the formation of this State, and the decision of her court of appeals is binding authority upon us, and we do not feel disposed to depart from it. Whatever evils may result, and many of them do result from the relaxation of the rule we have been considering, it may be they will be more than equalled, by the pecuniary aid and encouragement, which in consequence thereof, may be safely given by directors and officers of corporations to enable them safely to carry on their business. This question was elaborately discussed by the bar, and considered by the court of appeals of Virginia in *Burr's executor, &c.* v. *McDonald, &c.*, 3 Grat. 215, wherein that court held : " That as a corporation may contract debts to its individual corporators, it is as much bound to pay or secure such debts as debts due to strangers, and the fact that a deed is given to secure such debts does not render it fraudulent, unless such fraudulent intent is shown." It is

to be observed, however, that in this case the preferred credi-
tors of the corporation were stockholders, and that the deed
was ordered to be made by the stockholders in general meet-
ing assembled, and not by the directors; nor for the benefit
of another director.   This case was decided by the court of
appeals in 1846, but it left untouched the question as to the
effect of such a deed of trust, had the same been made by one
or more members of a board of directors to or for the
benefit of another director or any other officer of the corpo-
ration holding towards it a fiduciary relation.   But it may
be safely assumed that in any case where one director partici-
pated with others in any act in regard to the trust-property,
for the benefit of the fiduciary, at the expense of the *cestui
que trust* such act was for that cause fraudulent as to him.
But it would seem from the fifty-second section of the fifty-
third chapter of the Code of West Virginia, *supra*, that this
rule has in effect been modified, for it evidently concedes
that even directors may enter into contracts with other di-
rectors in regard to the corporate property, which so far
from being declared for that cause void is expressly made
lawful to be done, even by number less than what is nec-
essary to constitute a quorum. In such a case the director
interested other than as a stockholder in any question is not
permitted to vote on it, or to be present at the board while
it is under consideration, he is required to withdraw, and then
the question my be decided by even less than a quorum.
This would seem to leave every such act of the director open
to explanation but we are of opinion that *even then*, unless
it was made to appear by clear and convincing testimony
that such act was free from all taint of fraud or unfairness
on the part of said director, it ought to be set aside at the
option of the beneficiary or of the party standing in such
position.   Such advantage so obtained by such director
ought to be held as *prima facie* fraudulent, yet capable of being
purged of the fraudulent taint by clear and convincing proof
of its fairness, reasonableness and absolute freedom from
fraud and unfairness.   Like a conveyance of property from
a husband to his wife, it may be honest, and will be so held,
when she has clearly shown she has purchased and paid for
the same out of her own separate estate not derived from her

husband, but not until she has done so. *Smith* v. *Skeary*, 17 Conn. 47; *Twin Lick Oil Company* v. *Marbury*, 91 U. S. 587; *Addison, &c. and Blythe, &c.* v. *Lewis &e.*, 75 Va. 701. In this last case it was distinctly held, that when a director of a corporation charged with others with the control and management of the corporation lends money to the corporation and so becomes a party to a contract with the company his obligation to deal candidly and fairly with the company is increased in the precise degree that his representative character has given him power and control in the affairs of the company; but the general doctrine with this class of contracts is not that they are absolutely void, but that they are voidable at the election of the party, whose interest has been so represented by the party claiming under the contract. Applying these principles of law to the facts of the case under consideration we are further of opinion that the said deed of trust executed to the said Howard, trustee, dated August 13, 1878 to secure the said E. C. Harpold the sum of $12,000.00 is not only fraudulent in fact but for the reasons herein stated is fraudulent in law, and therefore there is no error in the decree of the circuit court of Mason county rendered herein on September 20, 1882, and the same is affirmed with costs to the appellees and damages according to law.

AFFIRMED.