##### FOR THE

### COUNTY OF BENNINGTON.

#### FEBRUARY TERM, 1846.

---

PRESENT,

HON. CHARLES K. WILLIAMS, CHIEF JUDGE.
HON. ISAAC F. REDFIELD,
HON. MILO L. BENNETT, } ASSISTANT JUDGES.
HON. DANIEL KELLOGG.

---

HEMAN SWIFT AND STEPHEN PRATT *v.* THE VERMONT MUTUAL
FIRE INSURANCE COMPANY.

An equitable estate in fee simple is as much an insurable interest in buildings, against fire, as an absolute legal estate in fee simple, whether at common law, or within the act incorporating the Vermont Mutual Fire Insurance Company.

By the term " less estate therein," in section ten of the act incorporating the Vermont Mutual Fire Insurance Company, is intended estates of *less duration* than estates in fee simple,—as estates in fee tail, for life, for years, or at will.

A policy of insurance from said company is not avoided by any formal defects in the title deed of the assured, which might be corrected in a court of equity.

39

ASSUMPSIT upon a policy of insurance. The plaintiffs alleged in their declaration, that, on the tenth day of June, 1837, one Alvah Hawks, being the owner in fee of a certain tavern house and other buildings in Woodford, which were subject to a mortgage to the plaintiff Swift for $1400, made application to the defendants for insurance on said buildings, and on certain property therein, for the benefit of both Hawks and Swift; that the defendants thereupon made and delivered their policy of insurance to Hawks and Swift, to continue in force from twelve o'clock at noon on the 10th day of June, 1837, until twelve o'clock at noon on the tenth day of June, 1843, by which they insured to Hawks and Swift, on the said buildings and property, $2450, being the sum of $1200 on the tavern house, and the remainder upon the other property; that afterwards, on the third day of February, 1843, Hawks conveyed all his right, title and interest in the buildings insured to the plaintiff Pratt, and, on the 20th day of February, 1843, assigned to Pratt the said policy of insurance; and that, on the 27th day of March, 1843, the said assignment was duly ratified and confirmed by the directors of the company, pursuant to the act of incorporation and by-laws of the company. And the plaintiffs averred, that, on the 25th day of May, 1843, the said tavern house was consumed by fire; of which due notice was given to the defendants. The declaration also contained counts in *indebitatus assumpsit* for work and labor, goods sold, &c. and the money counts. Plea, the general issue.

The parties agreed, in the case, that the insurance was effected and the loss happened in the manner stated in the declaration, and that at the time of insurance, assignment and loss the parties insured were in possession of the property insured, supposing that they had a perfect title to the same. The application for insurance was signed by Hawks, and stated the property, in general terms, to be " his," subject to a mortgage to Swift for $1400, which also covered six acres of land; and the application was for an insurance for the benefit of both. The policy was to Hawks and Swift, in the common form.

In regard to the title to the premises, the facts were conceded to be, that one Elisha Lyon, in the year 1831, entered into possession of the land, on which the buildings insured were subsequently erected, under a verbal contract with the Bennington Iron Company, a

private corporation, and that he erected thereon most of the build-- ings insured, and that the plaintiffs have all the title of Lyon ; that that title depends upon the effect of a deed, purporting to be the deed of the Bennington Iron Company, dated September 20, 1833; signed " *For the Bennington Iron Company, N. Leavenworth,*" and sealed and witnessed, but not acknowledged, or recorded ; that N. Leavenworth, who executed said deed, was the general agent of the Iron Company, in the management of their ordinary business, and one of the directors; that, at the date of said deed, the Iron Company had a corporate seal, with a particular device, which was not used upon said deed ; that the said company, since the execution of the deed, have made no claim to the land therein described, but the creditors of the company attached all their lands in the town of Woodford in February, 1842, but did not levy upon this land, and the lien, cre- ated by their attachment, expired after the commencement of this suit.   Certain records of the Bennington Iron Co. were also made part of the case stated, from which it appeared, that, at a meeting of said company, holden on the 22d of April, 1836, the report of a committee, showing the condition of the company's real estate, was accepted, a part of which, showing the real estate sold by the com- pany, stated, as sold from the " Forge Lot," six and a quarter acres, —which it was conceded was the land deeded to Lyon, as above stated.   These records contained also a vote of the company, passed at a meeting holden October 12, 1842, directing the President and Secretary of the company to execute a general deed of confirmation of certain land before that time sold and conveyed by deed by one Hammond, or by Leavenworth, in behalf of the company ; and, among the tracts of land specified in said vote, was the lot deeded to Lyon.

The act incorporating the defendants, and all subsequent statutes in relation thereto, and the by-laws of the defendants were also made part of the case stated.   The sixth section of the act of incorpora- tion was in these words ;—" That every member of said company shall be and hereby is bound and obliged to pay his portion of all losses and expenses happening or accruing in and to said com- pany ; and all buildings insured by and with said company, to- gether with the right, title and interest of the assured to the lands on which they stand, shall be pledged to said company, and the said

company shall have a lien thereon against the assured, during the continuance of his, her, or their policies;" to which section was appended a proviso, which was subsequently repealed by statute of 1831. The tenth section of the act of incorporation was in these words;—" That the said company may make insurance for any time, not exceeding ten years, and any policy of insurance, issued by said company, signed by the president and countersigned by the secretary, shall be deemed valid and binding on said company in all cases, when the assured has a title in fee simple, unincumbered, to the building, or buildings, insured, and to the land covered by the same ; but if the assured have a less estate therein, or if the premises be incumbered, the policy shall be void, unless the true title of the assured and the incumbrances on the premises be expressed therein and in the application therefor."

It was also conceded, that the plaintiffs, in October, 1843, paid to the defendants the sum of $7,84, being the amount of an assessment upon the premium note, which was ordered to be paid October 18, 1843, and that the same had never been refunded to the plaintiffs, the defendants being ignorant, at the time of the payment, of the defect in the plaintiffs' title.

It was agreed by the parties, that judgment should be rendered by the county court for the defendants, with liberty to the plaintiffs to except; and judgment was accordingly so rendered. Exceptions by plaintiffs.

*Hall & Lyman* for plaintiffs.

I. It appears, by the case, that Hawks, at the time of the insurance, wass eized of the premises insured, claiming title to the same in and that he had been so seized for several years, and that his grantee fee, continued so seized until after the loss, and that this right of seizin has never yet been questioned, or disturbed. The plaintiffs insist, that this makes an insurable title in fee, subject only to be defeated by showing, that it had been divested by title derived from the insured, or those under whom they claimed ; and that the defendants could not be allowed to show an outstanding adverse title in another.

II. The plaintiffs insist, that the deed executed by Leavenworth, in the name of the Iron Company, conveyed the *legal* title to Lyon.

1. It purports to be the deed of the corporation, to have the corporate seal affixed, and is executed in proper form.

2.    It is no valid objection, that the corporation had a seal, which was not used upon the deed; for it seems well settled, that a corporation may use any seal, and that the seal used thereby becomes *pro tanto*, the corporation seal.    Shep. Touch. 57.    Ang. & Ames on Corp. 150, § 2.    *Mill Dam Foundry* v. *Hovey*, 21 Pick. 417.

3.    The vote of the corporation of the 22d of April, 1836, previous to the effecting of the insurance, approving the sale of the land and acknowledging the receipt of the consideration, is evidence, both of the authority of Leavenworth and the adoption by the corporation of the seal used by him.    Paley on Agency 143.    *Burrill* v. *Nahant Bank*, 2 Metc. 163.

4.    The vote of the corporation would estop them from maintaining ejectment against Lyon, and would, of course, be evidence of a perfect title in him.

5.    The vote of the 12th of October, 1842, (before the loss,) ratifying and confirming the act of Leavenworth, is also equivalent to a previous authority, and makes the deed that of the corporation from the beginning.

6.    The deed being properly executed, the title passed to Lyon immediately on its delivery, without acknowledgement, or record. *Harrington* v. *Gage*, 6 Vt. 532.

III.    But if Hawks had not, in strictness, a *legal* title, he clearly had an equitable one, which a court of chancery would protect and enforce against the Bennington Iron Co., and such *equitable* title is sufficient to render the contract of insurance valid.

1.    The need by Leavenworth, if not sufficient to pass the title, is an acknowledgment, by the general' agent of the corporation, of the receipt of the consideration for the land, and an agreement to convey; and the vote of the corporation of the 22d of April, 1836, (before the insurance,) is a recognition of the contract and an appropriation of the proceeds of the sale to the use of the corporation. These facts, in connection with the additional fact, that possession had been taken under the contract, and the buildings, which are the subject of insurance, erected by the insured, and those under whom they claim, would be abundantly sufficient to induce a court of chancery to compel a conveyance by the corporation, if such conveyance were refused.

2. It is well settled, that one having an *equitable* title has an insurable interest, though the legal title may be in another; and that the party, effecting the insurance of such equitable interest, may represent himself as the owner of the property, without disclosing the particulars of his title.   Philips on Ins. 64, 94.   *Traders Ins. Co.* v. *Robert,* 9 Wend. 409.   *Tyler* v. *Ætna Ins. Co.,* 12 Wend. 512, 514 ; 16 Wend. 385.   *Locke* v. *N. Am. Ins. Co.,* 13 Mass. 61. *Bartlett* v. *Walter,* 13 Mass. 267.   *Strong* v. *Manuf. Ins. Co.* 10 Pick. 40.   *Curry* v. *Commonwealth Ins. Co.,* Ib. 535.   *Gordon* v. *Mass. Fire Ins. Co.,* 2 Pick. 249, 259.

IV.   The charter provisions of the Insurance Company have made no change in the law as applicable to this case.

1.   That the provision in the 10th section of the act of incorporation relates to the *quantity* of interest of the insured, and not to the *strength* of his title, is apparent from the language, which requires any estate, less than a fee simple, to be stated.   This section was intended so far to alter the common law, as to require, that, if the party had a life estate, or an estate for years, or an estate tail, &c., instead of an estate in fee, it should be so stated, together with the incumbrances ; but it was not designed to affect the question as to what should constitute an insurable interest in fee.

2.   The 6th section, which gives the Insurance Company a lien on the buildings insured, cannot affect the question in this case. This lien could only be enforced in chancery ; and it would be equally valid, whether the title of the insured were.legal, or equitable.

3.   None of the provisions in the act of incorporation can be construed to require the insured to have a perfect record title, which should be valid against the creditors of his grantors and against all possible contingencies.   The lien mentioned in the 6th section is only against the insured, and does not follow the estate out of his hands.

V.   If the policy is held to be void for want of title in the insured, the plaintiffs are entitled, under the common counts, to recover back the premium they have paid to the defendants, there having been no risk run by the defendants, and there having been no pretence of fraud on the part of the insured.   *Tyrie* v. *Fletcher,* Cowp. 668.   3 Stephens N. P. 2184.   Philips on Ins. 503, 512, 515.

*J. S. Robinson* and *Southworth* for defendants.

The defendants contend that the policy is void.

I.   The application of Hawks and the policy are silent as to the title ; this is equivalent to a representation of a perfect legal title in fee simple.

1.   The language of the statute shows that nothing less than such a title to such an estate will justify silence upon this subject by the applicant for insurance.   Sects. 6, 10.   Had Hawks *covenanted*, in the same language, that he had a title in fee simple, nothing short of a perfect title would have been deemed a performance.   *Lockwood* v. *Sturdevant*, 6 Conn. 385.   *Mitchell* v. *Hazen*, 4 Conn. 312, 313.   *Catlin* v. *Hurlburt*, 3 Vt. 407.   *Richardson* v. *Dorr*, 5 Vt. 9.   Shep. Touch. 170.

2.   That this is the true construction of the statute appears, also, from the manifest object of the requirement.

It is not denied, that, independent of any statute, or by-law, it is sufficient, if the assured has an interest in the property insured. But, unlike ordinary insurance companies, the defendants, upon entering into a contract of insurance, receive a promissory note for the premium, instead of receiving the premium itself.   As security for the payment of this note it is provided, in the act of incorporation, that the " right, *title* and interest " of the insured in and to the buildings and land shall be pledged to the defendants,—that they shall have a *lien* on them during the term of insurance.   This lien is effectual as to purchasers and creditors.   It is of the utmost importance, that the insurers be informed fully as to the legal title and estate of the insured, that they may require other security for the payment of the premium note, if necessary.

II.   At the date of the policy Hawks had not a perfect title to to the buildings insured and the land, but the title was in the Bennington Iron Company.   This depends upon the deed to Lyon.

1.   N. Leavenworth had no authority to execute the deed, there was no corporate meeting, no vote, no power of attorney.   His being a general agent and a director did not empower him to transfer the real estate of the corporation.   *Stow* v. *Wyse*, 7 Conn. 214.

2.   The only mode, by which corporations could convey their real estate at the date of this deed, was by the deed of their President, reciting the vote authorising him to convey.   *Wheelock v.*

*Moulton et al.*, 15 Vt. 521.  *Warner* v. *Mower*, 11 Vt. 390.  If this is incorrect, it is well settled, that the deed of a corporation must be under the corporate seal.  *Savings Bank* v. *Davis et al.*, 8 Conn. 207.  *Taft* v. *Brewster*, 9 Johns. 334.  *Roberts* v. *Button*, 14 Vt. 195.  *Warner* v. *Mower*, 11 Vt. 390.  4 Kent 451.  It is admitted, in this case, that the corporate seal was not used.

3.  The deed is not acknowledged.  This alone is a fatal defect; the possession of Hawks cannot cure it.

These defects have not been cured by any subsequent act of the Bennington Iron company, previous to the date of the policy.  The minute in a report of a committee, that this land had been *sold*, &c., has no reference to the deed, nor does it appear, that any of the stockholders, except Leavenworth, knew of its existence.  Again, a *vote* to ratify the deed would not transfer the title, which the deed failed to transfer, by reason of its not being executed in compliance with the statute.

III.  The assessment paid in 1843 cannot be recovered.  The plaintiffs ought not to recover for money, received under a mistake as to a matter, of which they should have given information, and most of which went to pay losses, which had happened before the plaintiffs had suffered.  *McCullogh* v. *Royal Assurance Co.*, 3 Camp. 406.

The opinion of the court was delivered by

REDFIELD, J.  The only question in the present case is, whether the plaintiffs' title was such, that the policy is binding upon the defendants.

The only defect in the plaintiffs' title, here insisted upon, is in the deed from the Bennington Iron Company to Lyon.  There is no doubt, I apprehend, that this deed, as a legal conveyance, is wholly defective.  It would hardly be necessary to go into detail, in pointing out its defects.  It is not a deed under the seal of the corporation, nor by the President of the corporation, nor in pursuance of any vote of the corporation.  It will hardly be contended, that a corporation can convey their land, except in some of these modes.  It is therefore not worth while to take time here, to determine what is the proper mode of executing such a conveyance; as, in every view, this is manifestly defective as a formal conveyance of legal title.

Swift et al. *v.* Vermont Mutual Fire Ins. Co.

But notwithstanding this, it is shown very clearly, that this deed was executed by the general agent of the corporation, and that it was understood by him and by the grantee to convey a perfect title in fee simple ; that the grantee, since the date of the deed, has continued to occupy the premises ; that this occupancy has been fully acquiesced in by the corporation; and that they have received the full price of the land, and, by express vote, have ratified this, with all other conveyances, made by the same agent.

There can be no doubt, then, that the corporation would, in equity, be compelled to convey to the plaintiffs. They are the equitable owners of the land in fee simple. And all the authorities concur in the point, that an equitable title, at common law, is as much an insurable interest in buildings, as a strictly legal title. The estate is but one; and it is indifferent, whether the assurance is in the name of the legal or of the equitable owner ; an insurance in the name of the trustee will enure for the benefit of his *cestui que trust.* All, that is required, is, that it be truly represented to the insurers. But to them it is unimportant; the extent of the plaintiffs' interest is the same, in both cases; so, too, the lien of the company will be as effectual upon this equitable, as upon a legal estate ; for they must, at all events, pursue it in equity, it being a right not capable of being enforced in courts of law.

We think it very clear, that this defect in the title does not avoid the policy, under the act of incorporation of the Insurance Company, which provides, that all policies upon buildings, when the insurance is general, shall only be binding, when the assured has an unincumbered title "in fee simple," but, that when he has any "less estate therein," the same shall be void. The incumbrance, in this case, was properly represented, and the assured in fact had no *less estate* in the premises than a fee simple, excepting the incumbrance. What is meant by "less estate," in the act, is, an estate of *less duration*, as an estate in fee tail, for life, or years, or at will. We think, therefore, that the estate was a fee simple, within the just and reasonable interpretation of this act.

Judgment reversed and case remanded.

NOTE by REDFIELD, J. I have not deemed it of much importance, in preparing the opinion in this case, to go into the general law of insurance, in

Swift et al. *v.* Vermont Mutual Fire Ins. Co.

order to determine what interests in buildings, or goods, are insurable. It seems to be well settled by the English cases, that policies, which were expressed to be made *interest, or no interest*, were valid at common law; but policies, which contained no such clause, were construed to be an assurance upon an interest of the assured; and, if it appeared, that he had in fact no insurable interest in the thing, the policy was void, at common law. The statute of 19 Geo. 2, c. 37, declared all wagering policies, that is, policies where the assured had no interest, void, and, farther, required the assured, in all actions upon a policy of insurance, to prove his interest by other testimony than the policy. And, as we do not, in this State, allow validity to any wagering contract, (*Collamer* v. *Day*, 2 Vt. 144,) we should not, of course, incline to view with much favor a wagering policy. No doubt in this State the law, in that respect, will require, that the assured should have an interest, both at the time of the insurance and the loss, the same as under the English statute. But, by referring to the English cases upon this subject, it will be seen, that the courts there have been very liberal in maintaining policies, where the assured really had any thing at hazard in the subject matter of the insurance. And it will be found, by an examination of the cases, that there this whole question of interest, which has been so much discussed in cases upon insurance, is made to turn upon the point, whether the assured really had any thing at hazard; whether the contract was an *indemnity* against a possible *loss*, or was a mere wager upon the happening of an event, which, in itself, was indifferent to the assured. In *Crawford* v. *Hunter*, 8 T. R. 14, Lord Kenyon says, " Then can a trustee insure ? There is no doubt but he may." "Can a consignee insure ? Surely he may." And if a mere naked trustee may insure, who has no beneficial interest, it would be grossly absurd to hold, that the *cestui que trust*, who has the whole interest, could not insure. But in the case of *Lucena* v. *Crawford et al.*, in the Exchequer chamber, 3 B. & P. 75, which seems to be the same case above cited, but under a different name, the right of the agent, trustee, or consignee, to insure is fully confirmed by the almost unanimous opinion of all the judges in the Exchequer chamber. This subject will be found, among others, very ably discussed in *Godin* v. *The London Assurance Co.*, 1 Burr. 489; also in *Godsall* v. *Boldero*, 9 East 72; and in the notes to Smith's Leading Cases, 2d vol. 165 *et seq.*, where most of the cases upon this subject are collected and studiously and judiciously digested. The cases cited by the plaintiffs' counsel show, that the same rule has prevailed very extensively in this country.