# Jordan & Co. v. Collins & Co.

*Attachment and Claim Suit.*

1. *Stockholders may authorize sale of corporate property without formal meeting for the purpose.*—Where the directors own all the stock of a corporation, they may by agreement among themselves authorize its president to sell its assets, and the fact that the authority was not given at a regular directors' meeting is immaterial.

2. *Stockholders may authorize or ratify ultra vires acts of agents subject, however, to intervening rights of others.*—Where no public policy or statute intervenes the corporation. that is, all its stockholders, may agree to, and render binding, acts of officers and agents which are without the charter powers, and such acts when done without authority may be ratified and validated by the shareholders expressly or by acquiesence subject to intervening rights of others.

3. *Knowledge by buyer of sellers intended fraud.*—If the intent of the seller in making a sale was to defraud his creditors, and the buyer knew of the seller's fraud, he is charged with it, though he had no intention to defraud the seller's creditors.

4. *Right of subsequent creditors to impeach sale for fraud.*—If the seller at the time of the sale had a general intent to defraud creditors, or a particular intent to defraud any one creditor, plaintiff may avail himself of it, though he might not have been a creditor at the time of the sale.

5. *Burden of proof where inadequacy of price is shown.*—Where the buyer paid an adequate price for the goods, the burden was on the plaintiff to show a fraudulent intent on the seller's part, and knowledge on the buyer's part of such intent, or of facts sufficient to charge the buyer with constructive notice thereof.

6. *Argumentative charge.*—It was proper to refuse to charge that the fact that part of the purchase money was paid by note does not affect the adequacy of the price as such charge is mere argument.

7. *Charge as to possession by defendant. of property attached, at the time of levy.*—In a statutory claim suit, a charge that if the jury find that at the time of the levy of the attachment the property was not in defendant's possession, the verdict must be for claimants, was properly refused.

8. *Charge as to secret trust for benefit of seller.*—On an issue as to whether a sale was fraudulent, a charge that if it was not a *bona fide* one, but was intended by the seller and buyer to be held in secret trust for the benefit of the seller, the jury must find for plaintiff, was proper.

Vol 107.

[Jordan & Co. v. Collins & Co.]

9. *Failure of jury to assess value of attached property separately not available on motion in arrest of judgment.*—As, in a statutory claim suit, the jury is only required to assess the value of the articles separately when such assessment is practicable, if the jury fail to make such assessment, it will be presumed, on a motion in arrest of judgment, that it was impracticable to make it.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This was an attachment suit by O. S. Collins & Co., against the Lee Jordan Grocery Company in which B. L. Jordan & Co. intervened as claimants to try the right of property. The uncontradicted testimony of Lee Jordan and B. L. Jordan, referred to in the opinion of the court, is stated in the bill of exceptions as follows: "Lee Jordan, called for claimant, testified; that before the sale was made to B. L. Jordan & Co., he and his brother, B. L. Jordan, and witness' wife, A. Jordan, all of whom were the only directors and stockholders in the Lee Jordan Grocery Company, agreed to sell the stock of goods contained in their store to B. L. Jordan & Co. That B. L. Jordan & Co. was a firm composed of B. L. Jordan, and the above named L, and A. Jordan. And that they would sell said stock for the sum of $1,200 —$600 thereof in cash and their note payable in 30 days for the other $600. The cash was paid—$200 by his wife out of her own money, which her grandmother let her have, and $400 was paid by B. L. Jordan. That he used this money, as the president of the Lee Jordan Grocery Company, in praying off the debts due by the company. That the goods sold were sold at a fair and reasonable price. During the month of November, B. L. Jordan & Co. paid on the $600 note, at different times, about $265, and that B. L. Jordan then gave to the Lee Jordan Grocery Company a note for $200, payable December 5, 1892, which note the Lee Jordan Grocery Co. assigned to the Alabama National Bank to secure said bank for borrowed money, and the balance ($135) said B. L. Jordan & Co. made a note for and this note was turned over, when the assignment was made, to the assignee of the Lee Jordan Grocery, Company.

On cross examination this witness testified that there was no regular meeting of the Lee Jordan Grocery Company's directors to authorize the sale to B. L. Jordan &

Co. B. L. Jordan testified for claimants that on October 31, 1892, he and his brother, L. Jordan, and A Jordan, his brother's wife, formed a partnership under the name of B. L. Jordan & Co. and that they bought the stock of goods from the Lee Jordan Grocery Company for the sum of $1,200, and that the same was the fair and reasonable value, of said stock, and that as soon as he bought the stock he took charge and control of it. The remainder of that witness' testimony is substantially the same as that of Lee Jordan. The other facts of the case sufficiently appear in the opinion of the court.

At the request of the plaintiff in writing, the court gave to the jury the following charge: "I charge you, gentlemen of the jury, if you believe from the evidence that said alleged sale by the Lee Jordan Grocery Company to B. L. Jordan & Co. was not a *bona fide* sale to B. L. Jordan & Co. by the Lee Jordan Grocery Company, but was intended by the Lee Grocery Company and B. L. Jordan & Co. to be held in secret trust for the benefit of the Lee Jordan Grocery Company, you must find for the plaintiff." The claimants duly excepted to the giving of this charge, and separately excepted to the court's refusal to give each of the following written charges asked by them: (1) "If the jury believe the evidence, they will find for the claimants." (2) "If the jury find from the evidence that it was practicable, at the time of the interposition of the claim of B. L. Jordan & Co., made in the case, to have assessed the value of each of the articles levied on, as follows: The value of the staple groceries, the value of the fancy groceries, the value of the produce, and the value of the fresh meats,—separately, and for each of the kinds as a class, then you will find for the claimants, B. L. Jordan & Co." (3) "If the jury find from the evidence that it was practicable, at the time of the interposition of the claim of B. L. Jordan & Co., made in this cause, to have assessed the value of each of the articles levied on, to-wit, the separate value of the staple and fancy groceries as one, the value of the produce as another, and the value of the fresh meats as another, then you will find for the claimants, B. L. Jordan & Co." (4) "The fact, if you find it to be so, that part of the purchase money for the goods in said store was paid by a note, does not affect the ade-

quacy of the price fixed for the sale." (5) "Both the seller and the buyer must be guilty of fraud, and participate therein, to vitiate a sale; and, before the jury can find for the plaintiff in this suit, they must believe that both Lee Jordan Grocery Company and B. L. Jordan & Co. must have participated in the fraud for the purpose of defrauding the plaintiff and other creditors of the Lee Jordan Grocery Company." (6) "If the jury believe from the evidence that B. L. Jordan & Co. gave a fair and adequate price for the goods purchased, and that such sale was not made for the purpose of hindering, delaying, or defrauding the plaintiff, you will find for the claimants." (7) "If you find from the evidence that claimant gave a fair, adequate consideration for the goods in said store to the Lee Jordan Grocery Company, then I charge you that the burden of proof is on the plaintiff to show (1) a fraudulent intent on the part of the Lee Jordan Grocery Company in making said sale; and (2) knowledge on the part of B. L. Jordan & Co. of that intent, or of facts sufficient to charge them with constructive notice of it, or to charge them with notice of financial insolvency on the part of the Lee Jordan Grocery Company; and if, on considering all the evidence, both of these facts have not been established to your reasonable satisfaction, the verdict must be for the claimant." (8) "If the evidence shows that it was practicable, at the time the claim bond was made, to assess the value of the articles, then you should find for claimant." (9) "If the jury find that the property levied on in the suit was not in the possession of the Lee Jordan Grocery Company, nor under its control, at the time of the levy, then your verdict must be for the claimants, B. L. Jordan & Co." The jury returned the following verdict: "We the jury, find the issue in favor of the plaintiff, and assess the goods claimed and subject to plaintiff's attachment, with interest, as follows, namely: Value of goods and int., $1,200,"—signed by the foreman. Thereupon the claimants moved in arrest of judgment, upon the grounds that the verdict was not in accordance with law, and void, and because there was no separate value assessed or put upon the different articles claimed, at the time of the interposition of the claim. This motion in arrest of judgment was overruled, and the claimants duly excepted thereto. There was

judgment for the plaintiff. The claimants appeal from this judgment, and assign as error the giving of the charge. asked by plaintiff, the refusal to give the several charges requested by claimants, and the overruling of the motion in arrest of judgment.

J. W. Bush and Chisholm & Whaley, for the appellant.

Arnold & Evans and Mountjoy & Tomlinson for the appellee.

HEAD, J.—This is a statutory claim suit interposed by B. L. Jordan & Co., by which they claim title to certain goods levied on under attachment at the suit of O. S. Collins & Co. against Jordan Grocery Company. The goods had belonged to Jordan Grocery Company, but claimants claimed to have purchased them on Oct. 31st, 1892, prior to the levy of the attachment, in December, 1892. The validity of the alleged sale is attacked by the plaintiffs on two grounds : 1st, That there was no corporate authority from Jordan Grocery Company to the president to make the sale to the claimants and, 2d, That the sale was made with intent to hinder, delay or defraud the creditors of the Jordan Grocery Company. As to the first objection, the undisputed evidence shows that the only directors and stockholders of the selling company were Lee Jordan, L. Jordan and A. Jordan, Lee Jordan being president, and this sale being made by him as such; and that before the sale was made these parties agreed that it should be made, though the agreement was not at a regular directors'meeting. We think this was sufficient authority. The shareholders constitute the corporate association.—Morawetz on Corp., 227. No question of public policy, or statutory mandate intervening, the corporation, that is, all its shareholders, may even agree to, and render binding, acts of officers and agents which are *ultra vires*—acts without the charter powers ; and such acts when done without authority may be ratified and validated by the shareholders, and such ratification may be by silent acquiescence on their part. Morawetz, §§ 618 to 635. But such ratification can not impair intervening rights of others. § 620. Hence the ratification, in this case, made after the levy of the at-

tachment can not avail claimants anything.—*Norton v. Alabama Nat. Bank*, 102 Ala. 420. The prior agreement, however, of all the stockholders is available. The undisputed evidence shows that the sale was made to the parties and on the terms, as so authorized by all the directors and stockholders, on the 31st day of Oct., 1892. See the uncontroverted testimony of Lee Jordan and B. L. Jordan. The question whether the sale was fraudulent as to creditors, was, under the evidence, clearly one for the jury, hence the general charge requested by the claimants was properly refused. The 5th charge requested by the claimants goes too far, as an instruction, in defining the degree of participation in the fraud, by the buyer, essential to invalidate the sale. It asserts in strong terms that the buyer must have participated in the fraud for the purpose of defrauding plaintiff and other creditors. The law is that if the seller intended fraud, and the buyer knew, or ought to have known, of such intent, the sale will be avoided, although the latter had no desire or purpose whatever to defraud the former's creditors; and the charge is wrong, also, in asserting that there must have been a purpose to defraud plaintiff. If there was a general intent to defraud creditors, or a particular intent to defraud any particular creditor, plaintiff may avail himself of it, though he might not have been a creditor at the time of the sale. Upon this latter principle charge 6 was also properly refused.

We are of opinion charge 7 ought to have been given. If the claimants showed they paid a valuable consideration for the goods, then the burden of proof was on the plaintiff to prove the alleged fraud; and, we think, the elements of fraud essential to avoid the sale are fairly stated in the charge.

The 2d, 3d, and 8th charges are bad for reasons too obvious to require discussion. The practicability of proving, at the time of the interposition of the claim, the then separate values of the different articles levied on, had no pertinency whatever to any issue involved in the trial.

The 4th charge is a mere argument and was properly refused.

The 9th charge is too clearly erroneous to justify comment.

The charge given at the request of the plaintiffs is clearly correct.

The failure of the jury to assess the value of the several articles, separately, is not ground for a motion in arrest of judgment. The statute requires this to be done only when practicable, and the record failing to show it was done, it will be presumed, on motion in arrest of judgment, that it was not practicable.

For the error in refusing charge No. 7, the judgment is reversed and the cause remanded.

Reversed and remanded.