PHOENIX ASSURANCE COMPANY OF LONDON ET AL. V. J. H. DEAVENPORT.

Delivered May 10, 1897.

**1. Pleading—Matter of Defense—Forfeiture.**

A condition in an insurance policy which works a forfeiture if not complied with must be specially set up in the answer in an action on the policy, to be available.

**2. Deed by Sole Stockholder of Corporation—Validity.**

The grantee in a warranty deed executed by the substantial owner of all the capital stock of a corporation which owned the land is a sole, absolute, and unconditional owner of such land in fee simple, within the terms of an insurance policy providing that it shall be void if the insured is not such an owner.

**3. Deed in Individual Capacity by Survivor in Community.**

A deed executed by the grantor in his individual capacity, with covenants of general warranty, passes the title vested in him as survivor in community.

ERROR from Denton. Tried below before Hon. D. E. BARRETT.

*Wm. Thompson,* for plaintiff in error.—The deed under which J. H. Deavenport claims ownership of or interest in the property described in the policies of insurance did not convey to him the sole and unconditional ownership thereof, as required by the terms of the policies of insurance sued on, and the court should have so charged the jury, and a verdict should have been directed for defendants. Ins. Co. v. Camp, 64 Texas, 521; Ins. Co. v. Bohn, 65 Fed. Rep., 171; Waller v. Worthem, 10 Fed. Rep., 233; Ins. Co. v. Doll, 35 Md., 89; Ins. Co. v. Lawrence, 2 Pet., 25-50; 10 Pet., 507; Simonds v. Fireman's Fund, 35 S. W. Rep., 300; Orient v. Williamson, 25 S. E. Rep., 560.

*Owsley & Ragsdale,* for defendant in error.—The effect of the general warranty deed made by M. W. Deavenport, who was then the president, manager, only director, and sole owner of all the stock of the Denton Mill and Elevator Company, to the plaintiff, J. H. Deavenport, was to vest in the plaintiff the equitable title to the property described in the policies herein sued upon, and place the plaintiff in a position that he could enforce the conveyance to him of the legal title; and the irregularity which occurred in making said deed can not avail the defendants as a defense herein. Thomp. on Corp., secs. 18, 1073, 5096, 6653; Swift v.

Smith, 57 Am. Rep., 336; Hough v. Ins. Co., 76 Am. Dec., 581; Gaylord v. Ins. Co., 93 Am. Dec., 289.

HUNTER, ASSOCIATE JUSTICE.—On August 1, 1896, J. H. Deavenport filed suit against the Phoenix Assurance Company, of London, to recover upon a policy of fire insurance in the sum of $1000, upon a building in Denton County, Texas. On the same day, August 1, 1896, the same plaintiff, J. H. Deavenport, sued the Connecticut Fire Insurance Company, of Hartford, Conn., in the District Court of Denton County, Texas, to recover the sum of $1500 upon a policy of fire insurance upon the same house; each policy providing for the other. Attached to each petition as an exhibit was the policy sued upon. The first of said causes was numbered upon the docket of said court 2925, and the second was numbered 2926.

The defenses were the same in each case, and consisted of a general denial, and also that the plaintiff was not, at the time the policies were issued to him, the sole, absolute, and unconditional owner of the property insured, nor was he the owner of the land upon which the insured building stood, by fee simple title, and that by reason thereof, according to the terms of the policies, the said policies were void, and offered to return the premiums, with legal interest thereon.

These suits were consolidated and tried together in the District Court, and judgment rendered for the plaintiff for the amount of the policies as issued by each company respectively, upon the verdict of the jury based upon a peremptory charge given by the court to so find.

The record discloses the following facts: The policies were executed and issued by the plaintiffs in error respectively on the property in question, October 1, 1895, and in the terms as alleged in the plaintiff's petitions respectively, and they also contained the clauses and warranties as set forth in the answers respectively of the plaintiffs in error.

Prior to the time these policies were issued, the Denton Mill and Elevator Company, a private corporation duly incorporated and organized under the general incorporation laws of Texas, owned and held by general warranty deed the lot and the mill building thereon situated, which building was the property on which these policies were issued.

In February, 1892, M. W. Deavenport owned all the capital stock of the Denton Mill and Elevator Company except $1800 thereof. The record does not show the amount of capital stock issued by said corporation, but it does appear by the deed to the mill company that the consideration paid by the mill company for said property was $12,000, and that he then held a majority of its stock. This $1800 of stock was vested in Matt J. Wylie, a grandson of M. W. Deavenport, who was 14 or 15 years old in 1892, and said Deavenport was guardian of his person and estate. M. W. Deavenport about 1890 or 1891 placed $2500 of this stock in his wife's name, in order to keep up the board of directors, but she only held it in trust for that purpose.

On the 9th of May, 1892, his wife died, leaving four children living

and Matt J. Wylie, the son of a deceased daughter, and a community estate of about $30,000, including the homestead, which was worth about $5000 or $6000.

M. W. Deavenport was president and manager of the mill and elevator company from its organization in 1884 until he conveyed the lot and buildings in question to defendant in error in September, 1895. In February, 1892, the mill company ceased operations and ceased to keep up its organization, and in that month M. W. Deavenport took all the machinery out of the building and removed it to Quanah, in Hardeman County, Texas, and used it in a mill which he opened and began operating there, and he conveyed to his said ward an amount of the stock of this Quanah mill equal in value to the stock he owned in the Denton Mill and Elevator Company, intending thereby to take up and cancel his ward's stock in the latter named company, but no order of the Probate Court was obtained authorizing the exchange. In fact, the annual account fails to show that any stock of either company belongs to the ward's estate.

M. W. Deavenport had settled with all his children for their interests respectively in the community estate left to them by their mother, and the lot and building in question was on the 24th day of September, 1895, conveyed by him to defendant in error, in full of his interest in his mother's estate. The deed purported to convey a fee simple title, was in the usual form, contained covenants of general warranty, expressed a consideration of $3000 as the amount due him out of the community estate of his mother, and was made in the name of M. W. Deavenport as grantor in his individual capacity only. No settlement had been made with his said ward for his interest in the said community estate.

The building insured was totally destroyed by fire on the 9th day of March, 1896. It was real estate. It does not appear from the record whether M. W. Deavenport qualified as survivor in the community estate of himself and deceased wife or not.

No proofs of loss were made and furnished to the plaintiff in error companies before suit was brought, as required by the policies, but suit was filed thereon on August 1, 1896, as upon a liquidated demand, alleging that the property insured was real estate and the loss was total.

Plaintiffs in error complain that the court refused to charge the jury to find for them because plaintiff made no proof of loss, as required by the policies.

The policy issued by the Phoenix Company, for $1000, as shown by the statement of facts, contained this provision: "Within sixty days after a fire the assured shall furnish proofs of loss showing all insurance on the property; the ownership of the property; vacancies of the property; increases of the hazard, etc.; and the loss shall not be paid until sixty days after the proofs are furnished." Another clause provided: "To be paid only sixty days after proofs of loss are furnished in compliance with the requirements of the policy, showing no breach of the policy, and showing the amount of the loss."

We held in Insurance Company v. Chase, 33 Southwestern Reporter,

602, that where the property destroyed was real estate, and it was a total loss, proof of loss before bringing suit was not necessary, inasmuch as the policy in such cases, by virtue of our statute, became a liquidated demand. Our Supreme Court, while refusing a writ of error in that case, expressed a doubt as to the correctness of our view in cases where such proof, by the terms of the policy, is made a condition precedent to the right to recover (34 Southwestern Reporter, 93), but found it unnecessary to pass upon the question, as in that case the answer of the defendant company did not aver a forfeiture of the right to sue by reason of failing to make the proof of loss as required by the policy.

So, in this case, while we still believe that the logical result of the legislative enactment declaring that the policy in such cases "shall be held and considered to be a liquidated demand against the company for the full amount of such policy," would be to render nugatory all such provisions in the contract, and simplify the proceedings required for the collection of the claim by law, yet we find it unnecessary to reiterate our views on this subject, because in this case the defendant companies did not set up such defense in their answers. And although the plaintiff alleged that he made proofs of loss, as required by the policies, and made the policies exhibits to his petitions, yet as such clauses contained conditions which, if not complied with, worked forfeitures, we are of opinion that they should have been specially set up and relied upon in the answer, with all the distinctness and certainty required in pleadings of such character, in order to entitle the defendants to claim the forfeiture on that account. It will be noted, however, that the clauses above quoted from the Phoenix policy do not declare that the failure to make proofs shall work a forfeiture. In the Connecticut policy for $1500 no clause requiring proof of loss is found in the policy as given in the statement of facts.

The only remaining question in this case is whether J. H. Deavenport, at the date of the policies, was the sole, absolute and unconditional owner of the property, holding the same by fee simple title. This question is raised in the answers of the plaintiffs in error, where it is averred that L. & H. Blum owned an interest in the property, and also other persons unknown to plaintiffs in error but known to defendant in error, and also that the Denton Mill and Elevator Company owned the same by fee simple title.

The defense based upon the Blum claim is expressly abandoned in this court by plaintiffs in error's counsel, and we are therefore required only to determine whether the title of the Denton Mill and Elevator Company and the interest in the property held by Matt J. Wylie, or either of them, is such as to defeat the plaintiff's right to recover on the policies.

The Denton Mill and Elevator Company unquestionably held the legal title in its corporate name, but our Supreme Court held in the Dyches case (56 Texas, 573) that if the assured held the equitable title and was in a condition to enforce specific performance as against the person holding the legal title, this would be sufficient to support the warranty

that his title was in fee simple; citing Swift v. Ins. Co., 18 Vt., 313; Hough v. Ins. Co., 29 Conn., 10; Gayloid v. Ins. Co., 40 Mo., 16.

In the Vermont case the deed was so defectively executed that it did not convey the land from the corporation to the assured; yet the assured, having paid the consideration and taken possession and made permanent and valuable improvements, that distinguished jurist, Judge Redfield, in delivering the opinion of the court, said that his title was "in fee simple" within the meaning of the company's charter in that case, which declared only such policies binding as should be issued on property where the assured had an unincumbered title "in fee simple," but when he should have any less estate therein the policy should be void; holding that the reference to any less estate meant an estate in fee tail, for life, for years, or at will.

We think that the evidence of M. W. Deavenport shows that he was the owner substantially of all the capital stock of the Denton Mill and Elevator Company, and that, being the owner of all its stock, he was likewise the owner of all its property, and that his deed to J. H. Deavenport conveyed the sole, unconditional, absolute, fee simple title, and that at the date of the policies and of the loss such was the title of the assured to the property destroyed. 4 Thomp. on Corp., sec. 5096; Swift v. Smith, 65 Md., 428.

The title of the mill company is the only title distinctly pleaded as in any manner militating against the sole ownership of the assured. That company had ceased to keep up its organization since 1892. There were but two stockholders then, M. W. Deavenport and his ward, Matt J. Wylie, the latter owning only $1800 of its stock. This, by an arrangement with his ward, as we understand from the evidence, was taken up and canceled by M. W. Deavenport, and capital stock of equal value was given to the ward in its place in the Quanah Mill Company.

Whether Matt J. Wylie was a part owner of the stock of the company, and consequently was an equitable owner pro tanto of its property at the date of the policies, is not specifically raised by the pleadings of plaintiffs in error. But if he was a stockholder, still M. W. Deavenport, holding a majority of the stock, would have had the right to sell the property and dissolve the corporation, if the business of the corporation had ceased to be profitable. 1 Cook on Stockholders, sec. 667.

Nor is any question made in the pleadings of plaintiffs in error relating specifically to young Wylie's interest in the community estate of his grandparents, inherited from his grandmother, the deceased wife of M. W. Deavenport; but if the general allegation that others not known to defendants owned interests in the land sufficiently raises this question, which in the absence of a demurrer we think it does, then it is clear that it would avail the plaintiffs in error nothing here, because of their failure to plead and prove that M. W. Deavenport had not qualified under our statute as surviving husband. It would devolve upon plaintiffs in error to do this, in order to defeat or affect the title conveyed by him to the assured; for every presumption would, under the circumstances here pre-

sented, be indulged to support the deed and avoid the forfeiture herein claimed by plaintiffs in error, and the fact that he made the deed only in his individual capacity and not as surviving husband would make no difference, for such a deed, purporting to convey the property itself, with covenants of general warranty, would pass any title vested in him in any other capacity, as well as all his individual interest therein. Bennett v. Ranch Co., 21 S. W. Rep., 126, and authorities there cited.

We therefore overrule all of plaintiffs in error's assignments of error, and order that the judgment against each plaintiff in error be affirmed.

*Affirmed.*

Writ of error refused.