**BOSTON & TEXAS CORPORATION et al. v. GUARANTEE LIFE INS. CO. et al. (No. 7981.)**

(Court of Civil Appeals of Texas. Galveston. June 24, 1921. Rehearing Denied Oct. 6, 1921.)

**1. Appeal and error ⊚⇒931(3)—Finding of fact necessary to support judgment conclusively assumed.**

It must be conclusively assumed, where the court, before whom a cause was tried without a jury, filed no conclusions of law or fact, that every material fact on which there was evidence was found in such a way as to support the judgment rendered.

**2. Corporations ⊚⇒482(5) — Finding single stockholder owned and controlled all of corporation's stock warranted.**

Evidence *held* to support a finding that a single stockholder owned and controlled all of a corporation's stock.

**3. Corporations ⊚⇒182—Stockholders equitable owners of property to extent that contract or conveyance by all of them would be binding.**

The stockholders are, in final analysis, the equitable owners of its property to the extent that a contract impounding or a conveyance passing title to it by all of them would be binding and effective for the purpose.

**4. Corporations ⊚⇒477(3) — All stockholders held to have participated in execution of deed of trust and notes by corporation.**

All the stockholders of corporation must be held to have participated in execution of a deed of trust and notes secured thereby when a stockholder who indorsed the notes owned and controlled all of its stock.

**5. Corporations ⊚⇒477(8) — Neither corporation owned and controlled by single stockholder, nor its receiver, held entitled to avoid deed of trust and notes.**

Neither a corporation all of whose stock is owned by a single stockholder and which is but a cloak to shield his individual operations, nor its receiver, could avoid a deed of trust and notes secured thereby indorsed by such stockholder, on the ground that it was still a legal entity, and, being such, could neither in the first place execute the same, nor be precluded from setting up its inability to do so.

**6. Railroads ⊚⇒33(1)—Loan to dummy foreign corporation building railroad held not illegal under statute.**

Rev. St. § 6406, providing that no corporation except one chartered under the laws of the state shall be authorized to construct a railway, does not prohibit construction of a railroad by an individual, and hence a loan of money to a foreign corporation to construct a railroad in Texas is not illegal, where an individual owns all its stock and the corporation is but a dummy.

Appeal from District Court, Harris County; Charles E. Ashe, Judge.

Action by the Guarantee Life Insurance Company and others against the Boston & Texas Corporation and others. Judgment for plaintiffs, and the named defendant and its receiver appeal. Affirmed.

Hunt & Teagle, of Houston, and Ball & Seeligson and C. W. Trueheart, both of San Antonio, for appellants.

H. A. Hicks, of Denver, Colo., W. W. Searcy, of Brenham, and Hutchison, Bryan & Dyess, of Houston, for appellees.

GRAVES, J. In this cause judgment was rendered below in favor of appellee Farmers' Life Insurance Company against appellants Boston & Texas Corporation, A. W. Seeligson as its receiver, and S. A. Hopkins individually, for $110,288.98 as the aggregate sum found to be due the insurance company at that time as the owner and holder of 13 promissory notes for the sum of $5,000 each, dated January 13, 1913, due January 13, 1918, executed by the Boston & Texas Corporation, indorsed by S. A. Hopkins, and payable to the Continental Trust Company of Houston, Tex., together with the foreclosure of a deed of trust lien upon 7,000 acres of land in McMullen county, Tex., given by the corporation at the time of executing the notes as security for their payment; the judgment being certified for observance to the Seventy-Third district court of Bexar county, in which court the receivership of appellant corporation was pending.

The Boston & Texas Corporation, and Seeligson as its receiver, alone appeal, making but three main contentions in this court:

(1) That the notes and deed of trust sued on, having been given in consideration of money borrowed for the express and agreed purpose of enabling the corporation to extend the Artesian Belt Railroad from Christine to Crowther in McMullen county, Tex., were ultra vires, void, and not binding upon appellants.

(2) That no recovery upon the instruments declared upon, or otherwise, was authorized upon any theory of benefits had and received by the corporation, because none were either properly plead or proven.

(3) That, apart from the question of ultra vires, the notes and deed of trust were void because the lending of the money to the corporation, which was a foreign oil company, for the express purpose and design of having it construct and acquire a railroad in Texas, was illegal under Revised Statutes, art. 6406.

It is accordingly thought that a discussion of the grounds upon which the appeal is disposed of may appropriately be confined to the issues thus advanced.

The appellee insurance company answered these several defenses with two definite but

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

independent theories, offering both pleading and proof in support thereof:

(1) That the loan and the expenditures pursuant thereto were not only for authorized corporate purposes, but in fact redounded to the corporate benefit.

(2) That the corporation at all material times was a "one-man corporation," that is, that S. A. Hopkins owned and controlled all its stock at the time the notes and deed of trust were given on January 13, 1913, and also on November 30, 1914, when a written ratification and novation of the original transaction had been executed; that he was not only a joint maker with the corporation of all these obligations on both the dates mentioned, but in reality was then and at all other material times had been the substance of the organization itself; that it was a mere vehicle or form through and under which he carried on his operations, and as a consequence both he and it were estopped from setting up ultra vires as a defense, and neither through such claim could escape liability for the debt declared upon.

[1] The cause was tried before the court without a jury, and no conclusions of fact or law were filed; it must therefore in this court be assumed that every material fact upon which there was evidence was found in such way as to support the judgment rendered.

The deference thus due the trial court's action, in view of the answering issue of estoppel so raised in both pleading and proof by the appellee, in the opinion of this court makes of primal importance in determining these questions appellants present, the matter of whether or not Hopkins did own and control all the corporation's stock at the time claimed upon the one hand and denied upon the other, and, if he did, what effect that situation—regarded as a fact—had upon the issue of liability for the obligations in suit. Under the presumption referred to, that he did so own the stock must here be conclusively assumed to have been the finding of the lower court, and as a consequence there remains in that connection for this court but a single inquiry: Was the evidence sufficient to support such a finding?

[2] After a most painstaking examination of the statement of facts, we conclude that it was. There was, it is true, a sharp conflict in the testimony about the matter, but nothing more, in our opinion, than the trial court had the authority to resolve; in other words, there is neither a total lack of evidence of such ownership nor such a weight and preponderance against it as to make a finding that it existed clearly wrong.

The record of the evidence bearing upon the question is one of much length, and an attempt to even adequately summarize its various features here would probably too much extend this statement. It is deemed sufficient to say that on the date the papers declared upon were originally executed, January 13, 1913, the corporation's total capital stock was $300,000; of this Hopkins then held in his own name a certificate for $164,-881, representing to the trust company's officers in procuring the loan, however, that he then owned all the stock both of that corporation and of the Artesian Belt Railroad as well; the original contract for the loan under recitation that the purpose of it was to enable the parties receiving it, and especially S. A. Hopkins, to extend the railroad from Christine to Crowther, was made by Hopkins acting for himself and for the corporation; the resolution of its board of directors authorizing the contracting of the loan stated that the arrangement had been made through Mr. Hopkins, and subsequently he signed its name to a written agreement providing for the use of $10,327.39 of the money so borrowed to pay interest on the agreement of purchase he had prior to May 1, 1912, made for its benefit of the stock of the Artesian Belt Railroad.

On November 30, 1914, in consideration of the then holders' agreement to accept some overdue interest thereon, Hopkins and the corporation executed a written novation and extension of the notes sued on, the principle having been declared due for failure to pay interest installments thereon, in which they acknowledged the justness of their obligations thereunder, including the continuing validity of the deed of trust lien securing them, and repledged themselves to pay them according to their tenor and effect.

On March 2, 1914, there had been issued to Hopkins, in addition to the $164,881 he already held, a certificate for $135,112 of the remainder of $135,119 of the stock, so that on the date of this extension and novation agreement he held in his own name all but seven shares of the total capital stock of $300,000. These seven shares appear to have been then, as well as on the date the notes were originally given, standing in the names of seven persons whom Hopkins claimed to be directors in the corporation, one share to each; but the record bristles with testimony to the effect that these persons were on both the dates referred to, and at all other times had been, mere dummies for Hopkins, nominally holding directorships but in reality only recording his will and doing his bidding. Certain it is that in May, 1917, he delivered these seven shares also, along with the other $135,112 of stock above mentioned, to the Plymouth Oil Company, a circumstance strongly corroborative of his statement to the trust company's officers in first borrowing the money that he owned all the stock and the directors were his creatures and would do what he said. Indeed, the testimony was undisputed that Hopkins so completely controlled the nominal directors of the company

that when it suited his purposes, he would order them by wire to resign, which by answering wire they would do, and he would then appoint others in his office, who would pass the required resolutions.

At the time of this trial the Plymouth Oil Company had also acquired the first-mentioned $164,881 certificate, and so owned the entire capitalization. The finger of Hopkins was present there too, for he was one of its prime movers, if not in fact its organizer.

In the face of these significant and uncontroverted facts, which of themselves would have justified the finding that Hopkins did own and control all the stock, at least at the time of the 'ratification and novation of the entire debt on November 30, 1914, we regard it as of no controlling importance that he testified in June of 1918, in response to process in this cause, that on January 13, 1913, the date of the notes, the deed of trust on the 7,000 acres securing them, and of the resolution by the corporation's board of directors authorizing the transaction, he individually only owned $75,000 of the $164,-881 of stock then standing in his name, and that of the remaining $135,119 there were some 1,600 owners scattered over a dozen different states in this country and some in Canada, England, and Japan. As against this two unexplained facts of powerful portent remain:

(1) He had at all times held the legal title to the $164,881, with no suggestion in the record that his dominion over it was ever other than absolute;

(2) Whatever may have been the status in January, 1913, of the remainder of $135,-119, all of it had before November 30th of 1914 likewise come under the complete control of Hopkins, and thus there could have been no unrepresented voice in the regiving on that date of the obligations sued on.

Of further significant bearing upon this ownership issue, to say nothing of the oft-repeated and direct declaration of his intimates in the management of the business that Hopkins was the whole corporation and it was nothing more nor less than he, there stands another undisputed fact: Nowhere in this record is there intimation that any other person ever set up any rights as a stockholder; no other appeared in these court proceedings to object, or to assert that he then did or ever had owned any of the stock.

We also think there was sufficient evidence to support a finding that no creditor other than Hopkins himself interposed any objection to the entry and enforcement of this judgment.

Appellants claim there were other creditors, and that the receiver for the corporation was shown to have been appointed by the district court of Bexar county on averment to that effect. The appellees, upon the other hand, insist that the alleged indebtedness thus referred to, other than such of it as was owned and controlled by Hopkins, was shown either to have been paid or to have been transferred to other obligors than the corporation. Be that situation as it may, no such other creditor intervened here, nor did the receiver establish in this suit that any had proven up claims against the corporation in receivership proceeding.

From these findings upon and deductions from the facts, recurrence is now had to their legal effect.

[3] Under the conclusion that Hopkins did so own and control all the stock of the Boston & Texas Corporation, that is, that it was merely his shadow, his alter ego, the inquiry as to whether or not the corporation exceeded its powers, or whether it was estopped to assert that it did, seems to us to become superseded by the doctrine that the stockholders of a corporation are in final analysis the equitable owners of its property, to the extent that a contract impounding or a conveyance passing title to it by all of them would be binding and effective for the purpose. Under this view the question of corporate power and of the application of estoppel thereto is no longer involved.

This doctrine referred to is well fortified by authority in Texas, as well as elsewhere. Harbor Co. v. Manning, 94 Tex. 558, 63 S. W. 627; Irrigation Co. v. Hutchins, 21 Tex. Civ. App. 274, 52 S. W. 101; Assurance Co. v. Davenport, 16 Tex. Civ. App. 283, 41 S. W. 399; Church Co. v. Martinez, 204 S. W. 486; Dillard v. Oil Co., 140 Tenn. 290, 204 S. W. 758.

[4,5] The principle and the fact that the cited cases apply it is recognized by appellants, but they contend it is inapplicable here because: First, all the stockholders did not participate in this transaction; and, second, if they all did, the corporation was still a legal entity, and being such, could neither in the first place lawfully execute the notes and deed of trust, nor in the second be precluded from setting up that inability.

Our fact finding disposes of this first objection, and we think the second is fully answered by the authorities already cited and by many others that might be. To apply the technical rules appertaining to the attributes of corporations contended for by appellants to such a situation as was here developed would, it seems to us, be exalting form above substance, appearance above reality, the very thing equity will not do. In addition to the fact of his ownership of the whole of the stock, the evidence before us justifies the further conclusion that this "distinct corporate entity," as appellants term it, was but a cloak to shield Hopkins in his individual operations, and that, if the plea of ultra vires had prevailed and this indebtedness been declared null and void as against ap-

pellants, he after being undisputedly shown to have received and used all the proceeds of the loan, and despite his admitted liability in propria persona, would yet have been enabled, through the use of this corporate vestment, to avoid repayment of the money he had so borrowed and used and also to still retain the property he had pledged as security for it. No principle of either law or equity with which this court is familiar looks with favor upon such legal legerdemain as that.

In Perkins v. Realty Co., 69 N. J. Eq. 731, 61 Atl. 170, this was said:

"In a case in which no question of public policy is concerned, and therefore the rights of the state or of the public are not involved, and where no creditors exist, and all of the stockholders have assented to the action, I do not see upon what basis the plea of ultra vires can be rested.

"When the rights of the state, the public and creditors are eliminated, and only the rights of stockholders are involved, the form of the fictional body termed a corporation does not hamper the court in the least in dealing with the rights of the parties. And that which the individuals composing the corporation might do. and will be held to have done among themselves, will be dealt with without regard to the immaterial fact that they were members of a fictional body.

"No citation of cases is necessary to establish the well-settled doctrine that courts of equity will disregard the corporate form where justice requires it and its retention is not needed to protect some interest requiring protection.

"To permit stockholders of corporations to unanimously make a disposition of the corporate property where no one else's rights are in any way prejudiced, and afterwards to repudiate their action upon the ground that it was beyond the power of the fictional body to do the act, could serve no useful purpose, and would be merely available in aid of fraud."

Of similar import is the declaration of the Supreme Court of Missouri in Bank v. Trust Company, 187 Mo. 494, 86 S. W. 109, 70 L. R. A. 79, while our own Supreme Court through Chief Justice Gaines in the Manning Case, supra, thus quotes with approval from Thompson on Corporations:

" 'Other decisions tend to the conclusion that whilst, in theory of law, the corporation and its shareholders are distinct persons, and the latter have no agency for the former, yet equity, which looks to the substance of things, may, in an appropriate case, and for the purposes of justice, treat a debtor corporation and an individual owner of all its shares as identical.' 7 Thomp. on Corp., § 8043. The text is supported by the following cases: Jordan v. Collins, 107 Ala. 572; Moore, etc., Co. v. Towers, etc., Co., 87 Ala. 206; Swift v. Smith, 65 Md. 428."

233 S.W.—65

It may be quite true, as appellants so ably argue, that upon their particular facts these cited cases do not, as concerns the defensive plea of ultra vires, involve instances—to use appellants' own language—of "the inherent want of power in the corporation," but rather those of "simply a want of power in the corporate officers or agents, a disregard of certain formalities, or an improper use of power"; still that does not in any wise inveigh against their pronouncement of the rule that—

"Equity, which looks to the substance of things, may, in an appropriate case, and for the purposes of justice, treat a debtor corporation and an individual owner of all its shares as identical."

In the opinion of this court the facts here presented make this not only an appropriate but a most fitting case for the application of that equitable doctrine. As was said in the Missouri case, supra (187 Mo. 494, 86 S. W. 109, 70 L. R. A. 79), the law never sustains a defense of the kind here tendered, that is, one grounded on the want of corporate power, out of regard for a defendant, but only where an imperative rule of public policy requires it. If for the purposes of justice Hopkins and his nominal corporation must here be treated as identical, how could it still be said that any sound consideration of public policy would be trenched upon by denying him the privilege of borrowing, giving his note for, and using this money, and then escaping its repayment while at the same time retaining the property he had pledged in security by merely donning his corporate clothes?

[6] But it is deemed unnecessary to pursue the discussion further. Obviously, under the conclusions stated, the third contention of appellants that article 6406 of our Revised Statutes stands in the way is likewise untenable. It has reference to corporations only, and does not prohibit the construction and acquirement of a railroad by an individual.

Whether or not, under a finding that there had been other owners of the stock, the ultra vires plea would have been valid against the contract and estoppel as from benefits received by the corporation applicable to it, as well as whether in such circumstances, what was so undertaken would then have been illegal under the statute invoked, being, under the view we have taken, unnecessary to the decision, are questions not determined.

Our conclusion is that all assignments should be overruled and the trial court's judgment affirmed; that order has been entered.

Affirmed.